540 P.2d 284

**In the Matter of the Termination of the Parental Rights of Vance J. MATTHEWS.**

**Judith C. MAIER, Petitioner-Appellant,**

v.

**Vance J. MATTHEWS, Respondent-Respondent.**

**No. 11845.**

Supreme Court of Idaho.

Sept. 8, 1975.

William A. Parsons, Burley, for petitioner-appellant.

Donald J. Chisholm, Rupert, for respondent-respondent.

BAKES, Justice.

This appeal involves an interpretation of I.C. § 16–2001 *et seq.*, the sections of the

Idaho Code providing for a termination of the parent-child relationship. Petitioner-appellant Judith C. Maier, a divorced parent who was awarded custody of a minor child, is attempting to terminate the parental rights of the respondent Vance J. Matthews, the non-custodial parent, on the ground that he has abandoned the child by having failed to maintain a normal parental relationship with the child.

John Todd Matthews was born on July 26, 1966. His parents, Vance J. Matthews and Judith C. Matthews, were divorced on August 21, 1967. The divorce decree awarded John Todd's custody to his mother and gave his father reasonable rights of visitation. Petitioner Judith remarried on April 16, 1969, to Dennis Maier and is now named Judith C. Maier.

In 1969 respondent Vance Matthews sought a modification of the divorce decree with respect to the custody of the child on the grounds that Judith had frustrated his rights of reasonable visitation of the child, which admittedly she had. He sought to modify the decree to give him custody of the child during explicit times during the summer months, in addition to reasonable rights of visitation at other times. The court granted his request for a modification and, finding that no effective visitation could take place in Judith's home because of animosity between the two parents, awarded custody of the minor child to Vance for one week during the summer of each year.

Thereafter respondent Vance Matthews was inducted into the military service and was not discharged until approximately May of 1971. During a portion of that time he was serving outside the continental United States. Thus, during his military service it was difficult, if not impossible for Vance Matthews to exercise his custody and visitation rights. After his discharge respondent visited his son on one occasion in 1971, but had not subsequently exercised his rights to custody under the modified decree prior to February 21, 1974,

the day that Judith petitioned the Magistrate Division of the District Court to terminate the parent-child relationship between Vance Matthews and John Todd.

After the petition was filed, a hearing was held on the matter before the Magistrate Division of the District Court in Minidoka County. The magistrate concluded that Vance J. Matthews had abandoned John Todd by having failed to maintain a normal parental relationship, or any relationship, for a period of three years and entered an order terminating the parent-child relationship between Vance Matthews and John Todd.

Vance Matthews appealed the magistrate's decision to the district court. The district court, without conducting an evidentiary hearing, reviewed the record of the proceedings before the magistrate's court and issued a memorandum opinion and order on December 26, 1974, concluding that:

"The evidence may support a finding that the statutory requirements [for termination of the parent-child relationship] have been met. And the court recognizes the rule that a finding based upon substantial and competent evidence, though conflicting, will be supported. This is a fine rule for most of the cases. But when it comes to the determination of human rights in the basic family perspective, the rule must fall in favor of determining what is best for all concerned. That is the policy so stated by the state of Idaho in cases of the kind before us now.

". . . . Abandonment, as contemplated by the statutes, is not apparent. THEREFORE,

"IT IS ORDERED that there are not sufficient grounds existing for the radical remedy of termination of parent-child relationship, and accordingly the judgment of the Magistrate Division is REVERSED and the cause remanded with direction to dismiss the petition." (Clk.Tr., p. 25).

From this order and ruling of the district court, Judith Maier has appealed. We reverse the order of the district court and remand the matter to it for further proceedings.

This appeal presents issues of appellate procedure and the standard of review in appeals from the magistrate court to the district court, and of the construction of the statute providing for termination of the parent-child relationship. We shall first consider the procedural issues.

## MATTERS OF PROCEDURE

I.C. § 1–2213(2) defines the power of a district judge to review a decision of a magistrate upon appeal:

"(2) Unless otherwise provided by law or rule, a district court judge shall review the case on the record on appeal and affirm, reverse, remand, or modify the judgment; provided, that the district judge in his discretion, may remand the case for a new trial with such instructions as he may deem necessary or he may direct that the case be tried de novo before him."

Civil Appellate Rule 15, then in effect, provided:

"RULE 15. WHAT MAY BE REVIEWED ON APPEAL.—Upon an appeal from a judgment the court may review the verdict or decision and any intermediate order or decision which involves the merits or necessarily affects the judgment except a decision or order from which an appeal might have been taken; provided, that whenever there is substantial evidence to support a verdict the same shall not be set aside."

■ The district court has three options in reviewing a decision of the magistrate: (1) it may review the case on the record as an appellate court; (2) it may remand the case for a new trial with such instructions as it deems necessary; or (3) it may try the case *de novo*. The district court apparently chose the first option, i. e., reviewing the decision of the magistrate on the record as an appellate court. Thus, it was bound by the standards of appellate review contained in Rule 15. Because it was acting as an appellate court, it was error for the district court to substitute its evaluation of the evidence for that of the magistrate. When the district court is reviewing a decision of the magistrate division upon the record, "it is contemplated that the district judge hearing the appeal shall evaluate the record as an appellate court, i. e., to determine the factual sufficiency of the record to sustain the judgment or order from which the appeal was taken." *In re Estate of Stibar*, 96 Idaho 162, 163, 525 P.2d 357, 358 (1974). *Cf. In re Estate of Bogert*, 96 Idaho 522, 531 P.2d 1167 (1975). In this case the district court expressly rejected the rule that a finding based upon substantial and competent, though conflicting evidence will be upheld, and based his decision upon an evaluation of the facts differing from that of the magistrate. Therefore, his order must be reversed.

■ Were this a case in which the magistrate's findings of fact were supported by the evidence in the record, and the magistrate had applied correct rules of law, we would, in the interests of efficient and expeditious administration of justice, reinstate the judgment of the magistrate and put an end to the litigation. *E. g., In re Estate of Bogert*, supra. However, not all of the findings of the magistrate are supported by competent, substantial evidence, and a review of the four conclusions of law entered by the magistrate indicates that the proper rules of law applicable to termination proceedings were not followed, and therefore further proceedings must be conducted below to determine the proper disposition of the termination petition. The cause is remanded to the district court to either (1) remand the case to the magistrate for a new trial applying the correct rules of law, or (2) try the case *de novo*. We remand the case to the district court to make this decision.

MATTERS OF SUBSTANTIVE LAW

I.C. § 16–2001 *et seq.,* govern the termination of the parent-child relationship. I. C. § 16–2001 sets forth the purpose of the act:

"16–2001. *Purpose.*—The purpose of this act is to provide for voluntary and involuntary severance of the parent and child relationship and for substitution of parental care and supervision by judicial process, *thereby safeguarding the rights and interests of all parties concerned . . .* Implicit in this act is the philosophy that *wherever possible family life should be strengthened and preserved . . . .*" (Emphasis supplied).

I.C. § 16–2005 provides six conditions under which the parent-child relationship may be terminated. In this case the relationship was terminated by the magistrate under subsection (a) of the act, which provides:

"16–2005. *Conditions Under Which Termination May Be Granted.*—The court may grant an order terminating the relationship where it finds one or more of the following conditions exist:

"a. The parent has abandoned the child by having failed to maintain a normal parental relationship, including but not limited to reasonable support or regular personal contact; failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment under this section."

In reaching his decision, the following was included within the magistrate's findings of fact:

"9. The Respondent [Vance Matthews] explained his lack of personal contact with his son to be on the basis that he would wait until his son was of such age that his son could make a mature judgment of his own relative to the matters of termination and adoption." (Clk.Tr., pp. 16–17).

There is no evidence in the record to support finding of fact number 9. Vance Matthews did not testify that he had failed to enforce his visitation rights in order to allow his son John Todd to reach an age at which John Todd could make a mature judgment of his own upon the matters of termination and adoption. On the contrary, he testified as follows on the matter of why he had not maintained personal contact with the child:

"The thing that I have been concerned about in the whole thing [visitation] was that it didn't matter what I did or when I did it that John's physical condition and mental well-being was affected. That has been my concern all along. The thing that I have tried to avoid is there being any way that she [the mother Judith Maier] could say that a visitation custody situation between my son and myself was detrimental to him; because she has said that in the past. I have felt that until he was older and perhaps could understand a little better, that I wasn't going to be on one arm tugging and let her be on the other arm tugging on the other side." (Rptr.Tr., p. 31).

When asked what he had done to try to foster the parent-child relationship, Vance Matthews said:

"I have tried to do nothing to jeopardize that relationship from the standpoint of her [Judith Maier] being able to contend my visitation and custody rights were harmful to the boy." (Rptr.Tr., p. 34). Thus, there is no basis in the record for the magistrate's finding that Vance Matthews had not maintained personal contact with his son because he thought that John Todd should be ultimately responsible for the decision concerning termination and adoption. An order based upon such finding of fact must be set aside.

The magistrate entered the following conclusions of law:

"1. The Respondent did not show cause why he had failed to maintain a normal

parental relationship for more than one (1) year.

"2. Vance J. Matthews has abandoned John Todd Matthews by having failed to maintain a normal parental relationship, or any relationship, for a period of almost three (3) years." (Clk.Tr., p. 17).

These two conclusions of law raise the question of what is a "normal parental relationship" in a situation such as this, and who has the burden of proving the failure to maintain that relationship. What is or is not a normal parental relationship depends upon the unique circumstances of each case. Here, Vance Matthews, the father, was divorced from Judith Maier, the mother, and had been given only limited rights to visit with his child, i. e., one week during the summer and "reasonable visitation rights" during the balance of the year. Added to the father's limited right to communicate with his child was the mother's admitted efforts to frustrate those visitation rights, particularly in the earlier years of the divorce. While the record does indicate some amelioration of the mother's attitude toward the father's visitation rights, the only evidence in the record explaining why Vance Matthews had not visited his son was his testimony that he withheld those contacts in order to prevent the child from being the victim of a tug-of-war between the parents. Given this background of the relationship between the parties, the magistrate's interpretation of "normal parental relationship" did not adequately take into consideration the extremely difficult position in which the father, Vance Matthews, was placed. No parent should be required to exercise visitation rights under circumstances which he believes to be detrimental to the child for fear of having his parental rights to the child terminated if he does not exercise those rights. I.C. § 16–2001 specifically provides that "the rights and interests of all parties," including that of the minor, are to be safeguarded. If Vance Matthews felt that the insistence upon his custody and visitation rights would be detrimental to the child, in view of his ex-wife's attitude, such an honest belief would preclude a determination that he had abandoned his child by failing to maintain a normal parental relationship. The record indicates that these factors were not adequately considered by the magistrate in arriving at the conclusions of law.

In addition, conclusion of law number 1 places an erroneous burden of persuasion upon the appellant Vance Matthews. While I.C. § 16–2005(a) does provide that failure of the parent to maintain the normal parental relationship without just cause for a period of over one year is *prima facie* evidence of abandonment, that section does not place the burden of persuasion upon the parent whose rights are proposed to be terminated. The burden of persuasion of abandonment remains with the petitioner who seeks to terminate the parent-child relationship.

In summary, as stated in *State ex rel. Child v. Clouse,* 93 Idaho 893, 477 P.2d 834 (1970):

"[W]e are not concerned with [the] temporary denial of custody of children to their mother, but with the complete severance of the parent-child relationship. The gravity of the latter consequence may not be denied . . . ." 93 Idaho at 895, 477 P.2d at 836.

The cause is reversed and remanded to the district court for further proceedings. Costs to appellant.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.