**Joseph Thorton LOUIS, Petitioner–Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, Respondent–Appellee.**

No. 79–3849.

United States Court of Appeals, Fifth Circuit.

Nov. 19, 1980.

Lee R. Leonard, Federal Public Defender, New Orleans, La., for petitioner–appellant.

Brian G. Meissner, J. Kevin McNary, Asst. Dist. Attys., New Orleans, La., for respondent–appellee.

Before THORNBERRY, GEE and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

This is an appeal from the district court's dismissal of Joseph Thorton Louis' application for writ of habeas corpus. The district court rejected the U.S. magistrate's recommendation to grant the writ after reading the transcript of the hearing. On appeal we are presented with the question of whether, consistent with due process, a district judge may reject the magistrate's recommendation without hearing the relevant witness' testimony so as to assess credibility. We feel that due process requires the district judge to hear the testimony himself when he makes an independent evaluation of credibility and, accordingly, we reverse and remand for further proceedings consistent with this opinion.

### Background

On December 19, 1969, the petitioner, Louis, pleaded guilty to a manslaughter charge in the Louisiana Criminal District Court for the Parish of Orleans pursuant to a plea bargain agreement whereby Louis would receive a 21 year prison term rather than go to trial on a first degree murder charge. Louis retained private counsel, Clement Perschall, to represent him. The court's minutes contain an entry which indicates that the judge had explained the nature and consequence of the guilty plea and determined that the plea was voluntarily made.[1] Louis, however, alleges that his

---

1. The minute entry reads as follows:
   "The defendant was placed at the bar of the court attended by his counsel, Clement Perschall. The defendant through his coun-

sel, with the consent of the court and without any objection by the state, withdrew his plea of not guilty and pleaded guilty to Viol. R.S. 14:31, Manslaughter. The court waived pre-

plea was involuntary. He contends that his attorney told him that he could obtain Louis' release in two to three years if Louis accepted the plea and the 21 year prison sentence.

In 1972, when he was not released within the time promised by Perschall, Louis filed a state court petition for habeas corpus alleging his plea was involuntary. He then withdrew this petition, however, apparently on Perschall's advice that if he did so he would be out of prison soon. In 1973 he again filed for habeas corpus relief in state court, which was denied without a hearing. He tried again in 1978, but the state court dismissed his petition as repetitious and the Louisiana Supreme Court affirmed. *Louis v. Blackburn*, No. 63,067 (La. Nov. 10, 1978). Louis then filed for relief in federal court. The district judge referred the proceeding to a U.S. magistrate for the purpose of conducting an evidentiary hearing.

At the evidentiary hearing, Louis testified that Perschall had told him that, if he accepted the plea, Perschall would have him out in two to three years and would see that Louis remained in the parish prison rather than be sent to the state penitentiary. Louis also testified that although Perschall did not explain how he would do this, he understood that Perschall had some sort of influence which he would exercise in Louis' behalf. Perschall testified that he no longer had the file on the matter and could not recall exactly what happened in Louis' guilty plea proceeding. He insisted, however, that he would not have told Louis that he could get him out of prison in two or three years, but could possibly have told him he would be eligible for parole in seven years, after he served one–third of his sentence as required by law.

The magistrate found Louis' testimony concerning his conversations with Perschall credible and recommended that Louis' petition be granted because the guilty plea was not voluntarily and understandingly entered. The magistrate further concluded that Louis did not receive reasonably effective assistance of counsel because Perschall's advice that Louis would be out in two or three years was "a serious shortcoming which was not within the range of competence demanded of attorneys in criminal cases."

After reviewing the record of the evidentiary hearing and the recommendation of the magistrate, the district judge denied relief. Accepting the magistrate's determination of Louis' credibility, the judge assumed that Perschall had made the statement. He felt, however, that the attorney meant only that he would use his best efforts to obtain early release, which could not be understood as a guarantee. The court found this interpretation to be consistent with Perschall's testimony, which the judge found to be credible. As an alternative ground for dismissal, the judge held that the petition was barred by laches since Louis had waited seven years to file his petition in federal court.

### Credibility

We must first decide if the decision of granting Louis' habeas corpus petition is, in fact, a decision based on a credibility choice. Since the district judge accepted the magistrate's decision as to Louis' credibility, and then drew different inferences from his testimony, the State argues that credibility is not at issue. The petitioner argues, however, that a different credibility choice was made. We agree with the petitioner.

---

sentence investigation. All delays waived. The court prior to sentence, addressed the defendant personally and determined that the plea was made voluntarily. The court explained the nature of the charge and the consecuence (sic) of the plea. The court then read the District Attorney's file and determined that there was a factual basis for the plea. The court then sentenced the defend-

ant to serve twenty one (21) years in the State Penitentiary at hard labor. Defendant 28 years old; born April 25, 1941. Both the defendant and his parents are natives of Louisiana. Defendant remanded."
A diligent search was made for the court reporter's notes from that day's proceedings, but were not located.

In the hearing before the magistrate, we are faced with two different accounts of the critical facts. Louis testified that Perschall promised to get him out in two to three years if he pleaded guilty and accepted the 21 year sentence. Perschall testified that he would not have made such a promise although he did not remember the facts in this particular case. The magistrate, after hearing the testimony, believed Louis' testimony and found that the plea was involuntary because the attorney should never have made such a promise. He made no mention of any determination of the credibility of Perschall's testimony. The district judge accepted the magistrate's determination of Louis' credibility and also accepted Perschall's testimony as credible. The judge's interpretation of the evidence attempts to reconcile both of these different accounts of the facts but this reconciliation actually depends on a credibility choice—the credibility of the attorney, Perschall. The magistrate did not rely on Perschall's testimony in his report as did the district judge. Obviously, the district judge believed Perschall's testimony to be more credible than did the magistrate.

Ultimately, the decision in this case rests on Louis' understanding of what was said, regardless of the exact words spoken by Perschall. Only Louis testified to this critical fact. Perschall's mental state—how he intended those words to be understood—is irrelevant. We fail to see how the district judge can accept Louis' credibility and, at the same time, say that Perschall's statement could not be understood as Louis testified he understood it. When the district judge rejected the magistrate's recommendation, he implicitly rejected that part of Louis' testimony also.

## Due Process

We now turn to the merits. This case involves the referral provisions of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), which was recently considered by the Supreme Court in *United States v. Raddatz*, —— U.S. ——, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Under the statute, the district judge may designate a magistrate to conduct evidentiary hearings concerning various pretrial motions (such as motions to suppress evidence as was involved in *Raddatz*) or applications for post trial relief, with which we are confronted here. After the hearing, the magistrate makes proposed findings and recommendations for the disposition of the motion or application to the district judge. Upon the filing of written objections to the magistrate's recommendation,[2] the district judge is to make a "de novo determination" of the portions of the magistrate's report to which objection was made. The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

The Supreme Court held that the statute does not *require* the district judge to rehear the testimony on which the magistrate based his findings and recommendations in order to make an independent evaluation of credibility, although such a hearing is within his discretion. *Raddatz,* —— U.S. at ——, 100 S.Ct. at 2411–13.

In *Raddatz*, the Supreme Court held that when a district court *accepts* the recommendation of the magistrate, due process rights are adequately protected even though the judge, who acts as the ultimate decisionmaker, has not personally seen and heard the contested testimony. —— U.S. at ——, 100 S.Ct. at 2415. The Court emphasized that the statutory scheme includes sufficient procedures to alert the district judge whether to exercise his broad discretion to conduct a hearing and view the witness himself. *Id.* Expressly reserved from decision was the question with which we are faced today.

2. A written objection was not filed by the State in this case. The petitioner, however, does not argue with the proposition that the district judge may review the magistrate's findings in his own motion, without written objections by a party. Therefore, we assume, without deciding, that this is permissible.

"Neither the statute nor its legislative history reveals any specific consideration of the situation where a district judge after reviewing the record in the process of making a de novo 'determination' has doubts concerning the credibility findings of the magistrate. The issue is not before us, but we assume it is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach." 100 S.Ct. at 2415 n.7 (emphasis in original). We must now answer those serious questions.

In *United States v. Marshall*, 609 F.2d 152 (5th Cir. 1980), this court confronted a similar situation. There the district judge had declined to adopt the magistrate's recommendation on suppression of evidence without consulting the transcript of the suppression hearing held before the magistrate. This court remanded, finding error in the judge's rejection of the recommendation without at least reading the transcript. No opinion was expressed concerning whether a rejection on the transcript alone would be proper, but Judge Hill observed that "it would be a rare case in which a district judge could resolve credibility choices contrary to the recommendations of the magistrate without himself having had an opportunity to see and hear the witness testify." *Id.* at 155.

■ Like the Supreme Court and the panel in *Marshall*, we have severe doubts about the constitutionality of the district judge's reassessment of credibility without seeing and hearing the witnesses himself. Accordingly, in a situation involving the constitutional rights of a criminal defendant,[3] we hold that the district judge should not enter an order inconsistent with the credibility choices made by the magistrate without personally hearing the live testimony of the witnesses whose testimony is determinative.

■ One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses. See Fed.R.Civ.P. 52(a); *United States v. Oregon Medical Society*, 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952). The Supreme Court has emphasized, in cases that involve the constitutional rights of criminal defendants, that factual findings may not be made by someone who decides on the basis of a cold record without the opportunity to hear and observe the witnesses in order to determine their credibility. See, e. g., *Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974); *Holiday v. Johnston*, 313 U.S. 342, 352, 61 S.Ct. 1015, 1018, 85 L.Ed. 1392 (1941). (These cases, which were decided before the current version of § 636 was enacted, held that the district judge himself must hold the evidentiary hearing in federal habeas corpus cases). An exception to this general rule was created, however, in *Raddatz*. Due to the procedural safeguards contained in the statute, a district judge may accept a magistrate's findings concerning credibility and not violate due process. We feel that this reaches to the limits of due process.

In *Raddatz*, the Court reiterates three factors, originally set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), that should be considered in determining whether due process is satisfied:

"(a) the private interests implicated; (b) the risk of an erroneous determination by reason of the process accorded and the probable value of added procedural safeguards; and (c) the public interest and administrative burdens, including costs

---

**3.** We limit our decision today to credibility questions involved in the determination of critical fact issues affecting a person's constitutional rights such as those involved here. We do not hold that due process always requires the fact finder to see witnesses when making the credibility choices involved in making findings of fact.

that the additional procedures would involve." *Raddatz,* —— U.S. at ——, 100 S.Ct. at 2413.

In our case, two of these factors are identical to those in *Raddatz.* The private interest implicated is that of the highest order—the constitutional rights of a criminal defendant. The public interest and additional administrative burden involved is the duplication of the evidentiary hearing. The second factor, then, is the crucial one that alters the delicate balance of due process and forces us to require additional procedures for the protection of the rights of the petitioner.

An additional hearing before a district judge who agrees with the credibility determination of the magistrate, would do little, if anything, to further protect the defendant's interests. The possibility of an erroneous decision is minimal because of the safeguards built into the referral system. As Judge Gee said in *United States v. Whitmire,* 595 F.2d 1303, 1305 (5th Cir. 1979), "[i]ndeed, the factfinding process may be improved by the referral practice. In making a final determination, the district court has the benefit of a carefully developed record, a magistrate's thoughtful consideration of the issues, and argument of counsel regarding specifics not agreeable to the parties."

These safeguards are no longer present, however, when the district judge rejects the magistrate's credibility determinations. Another hearing would significantly increase the protection of the rights of the petitioner. If the district judge doubts the credibility determination of the magistrate, only by hearing the testimony himself does he have an adequate basis on which to base his decision. Upon hearing the testimony and observing the demeanor of the witnesses, he may come to the same conclusion as did the magistrate due to factors which are not disclosed on the face of a cold and impersonal written transcript. Or, indeed, he may feel that the magistrate did not correctly assess the credibility of the witnesses and reject his recommendation, as is his prerogative.

The district judge, in his decision whether to reject or accept the magistrate's recommendations, is not limited to a clearly erroneous standard as we are in our appellate review of facts found by the district courts. A district judge is entitled to reject a magistrate's recommendation on the basis of a different determination of credibility, as the district judge did here. A court of appeals, however, limited to a perusal of the written transcript, may not reverse for this reason under the clearly erroneous standard of review. In order to adequately determine the credibility of a witness as to such constitutional issues, the fact finder must observe the witness. This may be accomplished either by the district judge accepting the determination of the magistrate after reading the record, or by rejecting the magistrate's decision and coming to an independent decision after hearing the testimony and viewing the witnesses.

As an alternative ground for dismissal, the district court found that the petition was barred by laches under Rule 9(a) of the Rules Governing § 2254 cases.[4] We disagree. Louis filed his federal petition almost immediately after the Louisiana Supreme Court affirmed the denial of his writ in the state court. He filed his original petition within three years of his guilty plea. We feel the petitioner has been diligent in his efforts to obtain relief.

**REVERSED AND REMANDED.**

4. Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C., provides as follows:

> Delayed petitions.
> A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.