623 P.2d 1294

**In the Interest of Landis DILLARD, Jr., A Child Under 18 Years of Age, Appellant,**

v.

**The STATE of Idaho, Respondent.**

No. 13469.

Supreme Court of Idaho.

Feb. 25, 1981.

Dean J. Miller of Gigray, Miller, Downen & Weston, Caldwell, for appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for respondent.

DONALDSON, Justice.

The state alleged in a petition that appellant Dillard, a 17½ year old minor, committed the murder of Ruth Madsen, an elderly woman, in her trailer home located at the Marsing Job Corps Center near Marsing, Idaho. On March 22, 1978, the deceased's body was found in her trailer with three

knife slash wounds of the neck, and multiple stab wounds on her lower neck and chest. The curtains in the trailer had been partially burned in an apparent attempt to cover up the murder.

After an investigation, an Owyhee County Deputy Sheriff filed a petition alleging that Dillard committed the first degree murder of Ruth Madsen on or about March 21, 1978. On March 30, 1978, the prosecuting attorney of Owyhee County, State of Idaho, filed a motion to waive juvenile jurisdiction under I.C. § 16–1806 so that Dillard could be charged with, and tried for, the offense of first degree murder as an adult. The waiver decision determined whether Dillard, if found guilty at a subsequent proceeding, would be under juvenile protection services until he reaches majority, or would be subject to death or life imprisonment as an adult.[1] After a two-day evidentiary hearing, the magistrate made the following findings:

1. that Dillard is an immature, streetwise juvenile from an unstable home and has a sociopathic personality that is generally treatable;

2. that he is not a disruptive, hardened, or embittered juvenile;

3. that although Idaho has no adequate facilities itself, it has contracted with California making an appropriate juvenile rehabilitation program available for treatment of Dillard;

4. that Dillard has little experience with juvenile rehabilitation or correction programs;

5. that Dillard's substantiated prior offenses are burglaries at age 12, 15, and 16;

6. that the likelihood appears as good for Dillard as it would for most any other juvenile that he could be rehabilitated by available programs; and

7. that the offense alleged to have been committed by Dillard appears to have been committed unquestionably in an aggressive, violent, premeditated, or willful manner.

The magistrate described his weighing of the involved factors by stating that:

"[E]ven though the Court finds the offense charged is of a very serious nature, that the juvenile does have some serious prior record, that this is outweighed by the fact that juvenile programs and processes are available, if not in Idaho, available through contract through states such as California, that he is likely to be amenable as any other child of comparable age, personality, and background, that such have not been exhausted, and it is the intent of the Legislature that before a juvenile be treated as an adult, that it be shown that there would be no purpose or benefit from further efforts in the juvenile process or programs."

The denial of the motion to waive jurisdiction was appealed by the State to the district court.

The district court reviewed and reversed the magistrate's decision using the standards of review established by I.R.C.P. 83(u); Koester v. Koester, 99 Idaho 654, 586 P.2d 1370 (1978), and In the Matter of Matthews, 97 Idaho 99, 540 P.2d 284 (1975). The district court citing Koester, supra, permitted additional evidence to be entered pursuant to I.R.C.P. 83(u)(2) as to the lack of facilities available for Dillard's treatment and made its own findings as to such evidence. The district court explained that:

"Here as in Koester, the evidence offered by the state reflects a 'material change of circumstances that had occurred since the appeal' was filed. The state has offered, and this Court has admitted an affidavit of John Shuler, identified as the person who administers the [Idaho] program for placement and supervision of delinquent youths in other states, which relates that on March 5, 1979, he received a letter, a

1. This Court's decision now determines whether Dillard, if found guilty at a subsequent proceeding, will be under juvenile protection services for less than a year, or will be subject to death or life imprisonment as an adult.

copy of which is attached to the affidavit, from the California Youth Authority stating that 'due to population pressures, it is necessary to terminate the agreement entered into on July 1, 1978, between the State of Idaho and the Department of Youth Authority.' That letter further advised that it constituted the thirty day notice of termination provided for in the contract, that no additional referrals would be accepted after the thirty day period, and that it might become necessary to return to Idaho any persons already placed in the California facilities. Shuler's affidavit further states that on March 7, 1979, he talked by telephone with the California official who approves placement of youth in California facilities, and that said official advised Shuler that no other persons from Idaho would be accepted after April 1, 1979. Finally, the affidavit affirms that Idaho has no placement contracts with any states other than California."

After considering the additional evidence, the district court found that there were no facilities available to the court which would be adequate to provide any likelihood of rehabilitation of Dillard by his age of majority. In reversing the magistrate's decision, the district court pointed out that it did not prejudge Dillard's innocence or guilt. On appeal, Dillard raises issues regarding the standard of review in appeals from the magistrate court to the district court.

This Court has held that a district court reviewing a decision of a magistrate may review the case on the record as an appellate court, remand the case for a new trial with instructions, or try the case de novo. In the *Matter of Matthews, supra.*

I.R.C.P. 83(u)(1) provides:

"The scope of appellate review on an appeal to the district court shall be as follows:

(1) Upon an appeal from the magistrate's division of the district court, not involving a trial de novo, the district court shall review the case on the record and determine the appeal as an appellate court in the same manner and upon the same standards of review as an appeal from the district court to the Supreme Court under the statutes and law of this state, and the appellate rules of the Supreme Court .... [Amended January 8, 1976, effective March 1, 1976.]"

In *Hawkins v. Hawkins,* 99 Idaho 785, 589 P.2d 532 (1978), we read this rule as stating that a district court should perform the appellate review of a magistrate's decision in the same manner as this Court performs its appellate review of the trial decision of a district court. Furthermore, I.R.C.P. 83(u)(2) empowers the district court in an appellate review to hear additional evidence on one or more issues. In *Koester, supra,* this Court held:

"[T]hat where the district court choses to handle an appeal as an appellate review and then elects to hear additional evidence on one or more issues, these issues affected by the additional evidence shall be treated as if involving a trial *de novo.* In other words, to the extent that the new evidence affects the decision of the magistrate, the district court shall act as a trial court. Where the additional evidence admitted by the district court does not affect the determination of the magistrate, the district court shall act as an appellate court.

"On further appeal to this court from the determination of the district court where additional evidence is presented pursuant to I.R.C.P. 83(u)(2), the new matters affecting the magistrate's determination will be scrutinized by this court according to the same standard of review as other appeals from the district court. However, where the district court's review of the magistrate's determination is not affected by the new matters presented to the district court, our review of the district court will be as though the district court was an intermediate appellate court." *Id.* 99 Idaho at 656–57, 586 P.2d at 1372–73.

I.C. § 16–1806(8) [2] as added by 1977 Idaho Session Laws ch. 165, § 2, p. 427, and hence applicable, sets forth the factors on which the magistrate must base his decision about the petition for waiver of jurisdiction. This Court has recognized in *State v. Christensen*, 100 Idaho 631, 603 P.2d 586 (1979) that I.C. § 16–1806(8)(g) makes the amount of weight to be given each factor discretionary with the juvenile court and allows the waiver decision to be based on any one or a combination of the factors set forth in I.C. § 16–1806(8).

In the case at bar, the district court chose to review the decision of the magistrate as an appellate court and then elected to hear additional evidence regarding the availability of juvenile rehabilitation programs. Based on the additional evidence, the district court found that an adequate juvenile rehabilitation program was no longer available for Dillard. We find substantial and competent evidence to support the district court's *de novo* finding regarding the additional evidence.

The magistrate stated that the availability of an adequate juvenile rehabilitation program was a factor on which he relied in weighing the factors to make his decision. Since the additional evidence affected the weighing process, it was appropriate for the district court to weigh *de novo* the factors considered by the magis-

trate along with the factor on which additional evidence had been admitted. In doing so, it was discretionary with the district court to base its decision on any one or a combination of these factors pursuant to I.C. § 16–1806(8). In accordance with *Koester, supra,* the district court was required to accept those findings of the magistrate which were unaffected by the additional evidence. We find no abuse of discretion and affirm the district court.

BAKES, C. J., and McFADDEN and SHEPARD, JJ., concur.

BISTLINE, Justice, dissenting.

The Court's opinion became preordained when at oral argument a question from the bench made inquiry as to how old Dillard would be upon there emanating from this Court a final decision as to whether he will be treated as a juvenile or prosecuted as an adult. The poignant prophecy of that question—the answer to which the inquisitor knew—is embodied in footnote 1 to the Court's opinion. There the Court frames the issue before us as whether Dillard, if subsequently "found guilty," [1] will be under juvenile rehabilitation services for less than one year, or will be subject to death or life imprisonment as an adult. The state has laced its brief with a gruesome narration of the manner in which Dillard is alleged to have committed this horrendous crime, sug-

2. "(8) In considering whether or not to waive juvenile court jurisdiction over the child, the juvenile court shall consider the following factors:

(a)The seriousness of the offense and whether the protection of the community requires isolation of the child beyond that afforded by juvenile facilities;

(b) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(c) Whether the alleged offense was against persons or property, greater weight being given to offenses against persons;

(d) The maturity of the child as determined by considerations of his home, environment, emotional attitude, and pattern of living;

(e) The child's record and previous history of contacts with the juvenile justice system;

(f) The likelihood of rehabilitation of the child by use of facilities available to the court;

(g) The amount of weight to be given to each of the factors listed in subsection (8) of this section is discretionary with the court, and a determination that the minor is not a fit and proper subject to be dealt with under the juvenile court law may be based on any one or a combination of the factors set forth above, which shall be recited in the order of waiver."

1. The actual terminology in the case of a juvenile is whether he committed an act which would be a crime if committed by an adult. I.C. § 16–1803.

gesting thereby that Dillard deserves to be tried as an adult, and that society needs this protection. However that may be, the issue of whether Dillard actually committed this act has not yet been determined.

## I.

Today the Court holds that once the district court decides to allow any de novo evidence in an appeal from a magistrate's waiver decision, in this case just *a single affidavit*, as to a matter of which we could also take judicial notice, it then may make the decision of whether or not to waive jurisdiction *from a cold record* without being bound in the least by the weight given the various factors by the magistrate.[2] If I.R.C.P. 83(u)(2) is to now be given a greater stretching than it received in *Koester v. Koester*, 99 Idaho 654, 586 P.2d 1370 (1978), then it is time to reexamine that rule.

## A.

I.C. § 1–2213 provides the scope of review for a district court on appeal from the magistrate's court:

"(1) Appeals from final judgments of the magistrate's division shall be taken and heard in the manner prescribed by law or rule.

"(2) Unless otherwise provided by law or rule, a district court judge shall review the case on the record on appeal and affirm, reverse, remand, or modify the judgment; provided, that the district judge in his discretion, may remand the case for a new trial with such instructions as he may deem necessary or he may direct that the case be tried de novo before him."

Nothing in this statute provides for a partial de novo review. In fact, prior to the adoption of I.R.C.P. 83(u)(2) in 1975, this Court did not see a district court as having the option of a partial de novo review.

"The district court has three options in reviewing a decision of the magistrate: (1) it may review the case on the record as an appellate court; (2) it may remand the case for a new trial with such instructions as it deems necessary; or (3) it may try the case *de novo*." In the *Matter of Matthews*, 97 Idaho 99, 102, 540 P.2d 284, 287 (1975).

In *Koester v. Koester, supra*, the plain and simple provisions of Rule 83 were distorted by three members of the Court in order to accommodate the actions of a district judge who, on an appeal where he sat as an appellate court, went outside the confines of the rule and the *Matthews* case and allowed in evidence of circumstances occurring after the appeal was taken:

"[W]e hold that where the district court chooses to handle an appeal as an appellate review and then elects to hear additional evidence on one or more issues, those issues affected by the additional evidence shall be treated as if involving a trial *de novo*. In other words, to the extent that the new evidence affects the decision of the magistrate, the district court shall act as a trial court. Where the additional evidence admitted by the district court does not affect the determination of the magistrate, the district court shall act as an appellate court." *Id.* at 656, 586 P.2d at 1372.

The *Koester* aberration, even though unfortunate, was not at that time thought to provide that a district judge, after entering upon an appellate review, could in any event avoid being bound by magistrate court findings by a promiscuous election to hear additional evidence. In *Koester* the district court sat as an appellate court reviewing the magistrate's award of custody of the children, and the Court treated Koester's review of that question accordingly. On new evidence being allowed, however, the district court found that due to a mate-

---

**2.** Although the Court qualifies this by stating that the additional evidence affected the weighing process, it would be a rare case indeed when such would not be the case. If the evidence is neither relative nor probative, counsel likely would not offer it to an appellate court and the appellate court surely would not receive it.

rial and permanent change of circumstances custody should be given the mother during the summer months.[3] This latter question was sufficiently distinct from the former that.it was not unreasonable for the district court, whose jurisdiction is certainly no less than a magistrate's, to in the interests of judicial economy and common sense take up that new issue. This Court in *Koester* stated that the district court shall act as a trial court "*on those issues* affected by the additional evidence." (Emphasis added.) There was a whole new issue. The unfortunately worded statement "[i]n other words, to the extent that the new evidence affects the decision of the magistrate, the district court shall act as a trial court" does not alter the statement that this occurs *only on those new issues* where new evidence is taken. The proper disposition, if the magistrate erred, is, as in *Matthews*, either a remand to magistrate's court or a total trial de novo. This Court did not hold in *Koester* that allowing new evidence on a new issue gave the district court carte blanche to reweigh the entire record and redetermine the original custody award as a trial court rather than as an appellate court.[4] In the present case, however, that is just what the Court's opinion endorses.

#### B.

The importance of a juvenile waiver proceeding to the juvenile, and the necessity of providing "the essentials of due process and fair treatment," *Kent v. United States*, 383

U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966), are no longer open to question.

"It ·is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile .... The statutory scheme makes this plain. The Juvenile Court is vested with 'original and exclusive jurisdiction' of the child. This jurisdiction confers special rights and immunities. He is, as specified by the statute, shielded from publicity. He may be confined, but with rare exceptions he may not be jailed along with adults. He may be detained, but only until he is 21 years of age. The court is admonished by the statute to give preference to retaining the child in the custody of his parents 'unless his welfare and the safety and protection of the public can not be adequately safeguarded without * * * removal.' The child is protected against consequences of adult conviction such as the loss ·of civil rights, the use of adjudication against him in subsequent proceedings, and disqualification for public employment." *Id.* at 556–57, 86 S.Ct. at 1055.

Here, as in *Kent*, the waiver decision is as potentially important as the difference between a few years' confinement and a sentence of death. Nonetheless, the Court, on the.slender and quivering reed of *Koester*, gives its blessing to a district judge's appellate decision reversing a magistrate's determination of nonwaiver, where the district

---

**3.** In *Koester*, the question of whether there were changed circumstances that would justify custody by the mother *during the summer* had not ever been considered by the magistrate.

**4.** Justice Shepard questioned the right of the district court to rewrite custody provisions *on a cold record* amplified by cold affidavits:

"Thus, notwithstanding the finding of the magistrate as to the best interest of the children, the custody during the summer months has been placed with appellant mother. If such action had been taken by the magistrate court, I feel that the district court, solely on a cold record amplified by affidavits, was in no better position to make that *finding of fact* than would this Court. In my judgment, that

decision should be made by the trier of fact, who, in the instant case, was the magistrate." 99 Idaho at 659, 586 P.2d at 1375 (Shepard, C. J., dissenting).

In not concurring with the*Koester* aberration of Rule 83(u)(2), I did not feel that Justice Shepard was in error, but at some lengths pointed to much error in proceedings in the magistrate court—where at the very best Mrs. Koester should have prevailed on the doctrine of *Thurman v. Thurman*, 73 Idaho 122, 245 P.2d 810 (1952), and at the least should have as a matter of law not received less time in the summer with her children than she was given by the district judge. *See Dawson v. Dawson*, 90 Idaho 234, 409 P.2d 434 (1965).

court, rather than remanding, entered its own order of waiver, doing so on a cold record. The Court upholds this unwarranted action solely on the justification that additional evidence was taken by the district court [5] on *one* of the factors involved in making that determination.

Such a practice is both unsound and unwarranted and has no precedent in the law—not even in *Koester*. The district court should have concluded its appeal and, if it found error, then it should have entered a judgment of reversal and then proceeded to hear the entire matter de novo. The three opinions written just eight months ago in *Winn v. Winn,* 101 Idaho 270, 611 P.2d 1055, were at least in agreement that "a district court may order a trial *de novo* after conducting an appellate review." Justice Bakes writing for the majority, 101 Idaho at 273, 611 P.2d at 1058, in order "to wipe the slate clean, so that the trial in district court commences as if initiated there," Justice McFadden specially concurring, 101 Idaho at 275, 611 P.2d at 1060,— all of which is in "obvious recognition that a district judge's jurisdiction is equal to and greater than the jurisdiction of a magistrate [for which reason] the legislature further provided that the district court on reversal 'may direct that the case be tried de novo before him.' I.C. § 1–2213." Bistline, J., dissenting, 101 Idaho at 279, 611 P.2d at 1064.

This Court has no proper and acceptable choice but to now remand so the district court can do that which it should have done originally. The district judge after accepting that the single affidavit was in no better position than is this Court to decide the question of waiver. And this Court is in no better position than was the district judge. The *only* additional evidence taken by the district court was a *single affidavit* [6] which, as I mention above, could have been and can be judicially noticed, assuming as proper its interjection into the case after the appeal was taken—in which regard I have much doubt because of the questionable wisdom of establishing such a precedent, generally, and especially where as here it has caused extreme mischief.

The receipt of that single affidavit did not place the district judge in a position to act as a trial court and decide, *on a cold record,* the discretionary question of waiver. A basic due process analysis shows the error in allowing *any* factual redetermination on a cold record. The court in *Louis v. Blackburn,* 630 F.2d 1105 (5th Cir. 1980), held that when a matter has been referred to a magistrate under the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), a district court may not reject the magistrate's conclusions involving credibility without personally hearing the live testimony. The analysis in that case, which I quote at length because of its appropriateness, bears equally well on this case:

> "[W]e have severe doubts about the constitutionality of the district judge's reassessment of credibility without seeing and hearing the witnesses himself. Accordingly, in a situation involving the constitutional rights of a criminal defendant, we hold that the district judge should not enter an order inconsistent with the credibility choices made by the

---

5. The fact that there may not be adequate treatment facilities is not necessarily conclusive on the question of waiver. I.C. § 16–1806(8) lists five other factors to be considered, and leaves the weight to be given each to the discretion of the court. Although it is most likely that the magistrate would have waived jurisdiction when confronted with the findings of the district court, that remains a matter within his discretion as the trier of fact.

6. As such, this constituted adding cold record to cold record—based upon which the district court determined that Dillard should stand trial as an adult. This Court has frequently held, when convenient, that on review of a district court order or judgment based on a written record, "the appellate court may exercise its own discretion in passing on the matter." *Hearst Corp. v. Keller,* 100 Idaho 10, 592 P.2d 66 (1979); *Fisher v. Bunker Hill Co.,* 96 Idaho 341, 528 P.2d 903 (1974); *Saccomano v. North Idaho Shingle Co.,* 73 Idaho 284, 252 P.2d 518 (1953).

magistrate without personally hearing the live testimony of the witnesses whose testimony is determinative.

"One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses. *See* Fed.R.Civ.P. 52(a); *United States v. Oregon Medical Society*, 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952). The Supreme Court has emphasized in cases that involve the constitutional rights of criminal defendants, that factual findings may not be made by someone who decides on the basis of a cold record without the opportunity to hear and observe the witnesses in order to determine their credibility. *See, e. g., Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974); *Holiday v. Johnston*, 313 U.S. 342, 352, 61 S.Ct. 1015, 1018, 85 L.Ed. 1392 (1941). (These cases, which were decided before the current version of § 636 was enacted, held that the district judge himself must hold the evidentiary hearing in federal habeas corpus cases). An exception to this general rule was created, however, in *Raddatz*.[7] Due to the procedural safeguards contained in the statute, a district judge may accept a magistrate's findings concerning credibility and not violate due process. We feel that this reaches to the limits of due process.

"In *Raddatz*, the court reiterates three factors, originally set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), that should be considered in determining whether due process is satisfied:

'(a) the private interests implicated;

(b) the risk of an erroneous determina-

tion by reason of the process accorded and the probable value of added procedural safeguards; and (c) the public interest and administrative burdens, including costs that the additional procedures would involve.' *Raddatz*, 447 U.S. 677, 100 S.Ct. at 2413.

In our case, two of these factors are identical to those in *Raddatz*. The private interest implicated is that of the highest order—the constitutional rights of a criminal defendant. The public interest and additional administrative burden involved is the duplication of the evidentiary hearing. The second factor, then, is the crucial one that alters the delicate balance of due process and forces us to require additional procedures for the protection of the rights of the petitioner.

"An additional hearing before a district judge who agrees with the credibility determination of the magistrate, would do little, if anything, to further protect the defendant's interests. The possibility of an erroneous decision is minimal because of the safeguards built into the referral system. As Judge Gee said in *United States v. Whitmire*, 595 F.2d 1303, 1305 (5th Cir. 1979), '[i]ndeed, the factfinding process may be improved by the referral practice. In making a final determination, the district court has the benefit of a carefully developed record, a magistrate's thoughtful consideration of the issues, and argument of counsel regarding specifics not agreeable to the parties.'

"These safeguards are no longer present, however, when the district judge rejects the magistrate's credibility determinations. Another hearing would significantly increase the protection of the

---

7. The Court in *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), held that the district court does not have to hear the witnesses in person when he *accepts* the magistrate's recommendations. The Court also pointed out that

"we assume it is unlikely that a district judge would *reject* a magistrate's proposed findings

on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach." 100 S.Ct. at 2415 n. 7.

rights of the petitioner. If the district judge doubts the credibility determination of the magistrate, only by hearing the testimony himself does he have an adequate basis on which to base his decision. Upon hearing the testimony and observing the demeanor of the witnesses, he may come to the same conclusion as did the magistrate due to factors which are not disclosed on the face of a cold and impersonal written transcript. Or, indeed, he may feel that the magistrate did not correctly assess the credibility of the witnesses and reject his recommendation, as is his prerogative."

The private interest implicated here is the critically important decision of whether to waive jurisdiction, while the public burden would at most be an additional full hearing. The probable value of avoiding erroneous decisions through the added safeguard of requiring the factfinder who heard the evidence to make the waiver decision in this critically important area far outweighs any administrative inconvenience caused by an additional hearing. Assuming the order was appealable from magistrate court, and I cannot see that it was, the district court order should be reversed with directions to decide the case as an appellate court, and if grounds for reversal are found, to schedule the waiver issue for an immediate new trial.

## II.

I am unable to read the law at the time the magistrate entered his order refusing to waive jurisdiction as extending to the *state* a right to appeal that order. I.C. § 16–1806 provides in part that "[a]fter the filing of a petition and after full investigation and hearing the court *may* waive jurisdiction ... when [certain criteria are present]." (Emphasis added.) The statute on its face vests absolute discretion in the juvenile court to decline to waive jurisdiction over a juvenile. On the other hand, jurisdiction *may* not be waived in the *absence* of the criteria enumerated in the statute. Thus, a juvenile may appeal a waiver of jurisdiction if such a waiver is not founded upon evidence establishing the existence of one or more of the criteria enumerated in I.C. § 16–1806. The state, however, may not complain that the magistrate abused his discretion in *denying* a petition for waiver, since nothing in the statutory scheme, and certainly nothing in I.C. § 16–1806, *requires* a magistrate to waive jurisdiction.

Appeals from juvenile proceedings under the Youth Rehabilitation Act, I.C. § 16–1801, et seq., are governed by I.C. § 16–1819. That statute, *as it read at the time of the magistrate's order in this case*, provided:

"All orders or final judgments made by any court in matters *affecting a child* within the purview of this act may be appealed and reviewed as provided by the supreme court civil appellate rules, except no undertaking shall be required. Upon filing of the notice of appeal, the district court shall take jurisdiction of the case. If a child is in detention the court must promptly hold a hearing after the filing of a request as to whether the child shall remain in detention." (Emphasis added.)

I do not perceive that a magistrate's decision *not* to waive jurisdiction "affects" a child at all. It simply maintains the *status quo ante*; the child remains a child. It is true that the child is not exposed to the vastly more powerful retributive machinery which may be brought to bear upon an adult, but this does not "affect" the child in the sense of causing the child any *deprivation of* a right such as would be the basis for an appeal. Although the state may feel that its interests are "affected" by a refusal to waive jurisdiction, the statute did not provide for appeal of matters "affecting" the state.[8]

---

8. The district court felt differently. It reasoned that:

"The Act, in section 16–1819, provides that:

A decision on waiver favorable to a child does not affect the child adversely and the child would have neither reason nor right to appeal. The very connotation of the word affect, in the context used, jibes with a common dictionary understanding of the word which is: "to have a detrimental influence on." It needs no argument to say that for a juvenile to be waived into a trial for his life affects *him* within the meaning of the statute, and at that time presents the basis for an appeal, but only by the juvenile. My reading of this statute, as it read at the time of the magistrate's decision in this case, is apparently consistent with the legislature's reading of the statute. In 1980, the legislature amended the statute to specifically provide for an appeal by the state, but extremely limited, in fact *only* to appeal a magistrate determination declining to waive its exclusive jurisdiction, the very important issue now before us. I.C. § 16–1819 now reads:

> "*All orders or final judgments* made by any court in matters affecting a child within the purview of this act *may be appealed by the child. A decision* by the court pursuant to section 16–1806, Idaho Code, *not to waive* jurisdiction under the Youth Rehabilitation Act over the child *may be appealed by the state*. Appeals shall be reviewed as provided by the appellate rules of the Supreme Court of Idaho, except no undertaking shall be required. Upon filing of the notice of appeal, the district court shall take jurisdiction of the case. If a child is in detention the court must promptly hold a hearing after the filing of a request as to whether the child shall remain in detention." (Emphasis added to illustrate that the child can appeal all orders or judgments affecting him—but the state has only been given the right to appeal from a non-waiver decision.)

All of which serves to confirm my opinion that the state did not have the right to appeal the magistrate's decision in the first instance. While the issue of the state's right to appeal was raised and vigorously argued before the appellate district court, it

---

'All orders or final judgments made by any court in matters affecting a child within the purview of (the Act) may be appealed and reviewed . . .'

The Idaho Supreme Court, in *In re Doe*, 98 Idaho 40, 557 P.2d 634 (1976), interpreted this provision to mean that any order affecting 'substantial interests' of a juvenile could be appealed, whether or not it was a final order. And, *since the terms of the Act do not restrict the right of appeal to only those appeals filed by the child*, this Court is of the opinion that *In re Doe* logically extends to cover any order affecting the 'substantial interests' of the state.

"There can be no doubt that the state's 'substantial interests' are affected by a denial of waiver. In *State v. Harwood*, 98 Idaho 793, 572 P.2d 1228 (1977), the Court held that appellate review of waiver must be sought before adult charges have proceeded to trial. The Court based it result not only on the fact that a waiver is final termination of juvenile jurisdiction, but also the conclusion that 'since substantial rights of a juvenile may be lost by a waiver proceeding it constitutes a critical stage in the proceedings, *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the right to an immediate appeal from the waiver order is evident' (98 Idaho at 795, 572 P.2d 1228). The people of Idaho have 'substantial rights' or 'substantial interests' in the outcome of a waiver proceeding which are finally effected by a denial of waiver just as such rights of the juvenile are affected by a waiver. For, if the state is not allowed to appeal immediately from a denial it will never be able to challenge the ruling. Once the juvenile either admits the truth of the charge in the petition, or goes through an adjudicatory hearing as required by the Act, he can not be tried in adult court on the charge which forms the basis of the petition because of the constitutional prohibition against double jeopardy. *Wolf v. State*, supra; In the *Interest of Flores*, supra; *Breed v. Jones*, supra. Therefore, direct appeal from the denial of waiver is the only opportunity for the state to represent the people's interest in proper application of the waiver provisions of the act."

While the state may very well have a substantial interest in having this child tried as an adult, I.C. § 16–1819, as it was written at the time in question cannot be read as giving the state the right to appeal an adverse decision rendered in juvenile court.

was not here specifically stated as an issue.[9] However, as I have already noted, the waiver decision at issue here involves rights of the child absolutely fundamental in nature. Every precaution must be taken to insure that those rights are not abused by the state, even if this requires looking beyond procedural deficiencies. *See State v. White*, 97 Idaho 708, 551 P.2d 1344 (1976).

Moreover, we must constantly be vigilant as to our own jurisdiction. If the district court did not have a grant of legislative authority to hear an appeal from magistrate court—and clearly it did not—the district court acted without jurisdiction and this Court in turn has no jurisdiction over a void district court judgment other than to declare it void.

### III.

In *Wolf v. State*, 99 Idaho 476, 583 P.2d 1011 (1978), by a footnote found at page 497 of 99 Idaho, page 1032 of 583 P.2d after noting *one year's delay* from the time of the juvenile court's waiver decision until presentation of oral argument in this Court, I cautioned in part:

"If this Court is not going to adopt a rule which will eliminate some of the delay, the legislature should consider intervening. If magistrates are to preside at waiver hearings, and I see no reason why they should not, there should be a direct appeal to this Court. Magistrates regularly decide controversies of the most serious nature, such as is a waiver hearing, or any matter involving the best interests and welfare of children."

Rather than the one year delay involved in Wolf, here it was getting close to THREE *years* from the time Dillard was charged until oral argument was presented on appeal. Since my expression of concern in *Wolf* the Court has not adopted any rules or procedures pointed toward eliminating the delay, and the legislature has done no better, other than to insure that now for certain the state can prolong the sideshow by being granted the right of appeal from a juvenile court decision declining to waive jurisdiction. The net result in this case is going to be over three years of delay before Dillard is put on trial for his life—and then, rather than a 17 year old boy facing a jury of peers, he stands before them as a 21 year old adult. All too clearly the inordinate and inexcusable delay is going to result in a challenge to Dillard being deprived of the right to a speedy trial guaranteed to all by the provisions of both the Idaho Constitution and the Constitution of the United States. That the delay is inexcusable is irrefutable as is equally true that it could have been avoided. The Idaho legislature apparently has not yet come to grips with the constitutional requirement of a speedy trial. Neighboring states have. Both Washington and Oregon have passed statutory enactments requiring that an accused be brought to trial within sixty days after his first arraignment, it being the sense of the legislators of those states that such requirements comport with the constitutional requirements.

The Court is, of course, cognizant of those requirements. My thought that my remarks in *Wolf* might produce some procedural changes, either by the Court or by the legislature, served only to illustrate my naivete. There I suggested that a juvenile court's decision waiving jurisdiction should be directly appealable to the Supreme Court, avoiding at least one tier of appellate review, and also avoiding the yo-yo effect of a number of appeals and remands before the case ever reached the Supreme Court, as in *Wolf*. Implicit in that suggestion was the thought that the same time-saving could be affected by a Court or

**9.** Dillard's counsel sought, and by a 4–1 vote was denied, a writ of prohibition in this Court, challenging the state's claimed right of appeal. Apparently counsel read into that simple denial a holding by the Court that an appeal did lay on behalf of the state. It is more likely, however, that the issue was merely put off. Had the district judge not overruled the magistrate that question would have been moot.

legislative directive that waiver hearings be in the first instance conducted by district judges. Then, too, one appeal tier would be eliminated. Is there any sound reason why a district judge should not in waiver proceedings accept jurisdiction and act as the juvenile court? I think not. The legislature itself has provided that there shall be a juvenile court, and has determined that it may be either the district judge *or* the magistrate. For the most part in juvenile proceedings in the seven judicial districts the responsibility has been placed with magistrates. But that is not to say that where the state appears in juvenile court in an attempt to obtain that court's waiver of jurisdiction so that the juvenile can be tried as an adult, on felony charges, the district judges of the state should recognize the need for according a priority to such causes, and assume jurisdiction and accelerate the date set for the waiver hearing.

At the same time, as I have said before, and will repeat again and again, I see no reason why a magistrate should not continue to function as the juvenile court at a waiver hearing—provided by Court rule or legislative enactment, there is a direct appeal to the Supreme Court. That statement I make with full realization that we may shortly be getting the long-sought Intermediate Court of Appeals.

It is intolerable that waiver hearings be dragged along through one court after another—with the ultimate result that the juvenile offender, the prosecution of whom the state seeks as an adult, will in most instances have gained adult status (and appearance) by the time he is put on trial.

No reason suggests itself why the juvenile court (be it magistrate or district judge) cannot ordinarily pass its judgment on the waiver issue and this Court reach its appellate decision all within four and certainly not to exceed six months after the juvenile is charged. Nothing less will suffice.

The Supreme Court of Kansas has expressed a similar view:

"Darrell, who was seventeen years of age when jurisdiction was first waived, is now twenty years old. The case is being returned to the district court for reconsideration of the waiver question, which includes the issue of whether or not the young man is amenable to the care, treatment and training program available through the facilities of the juvenile court. While we express no opinion on what the ultimate disposition of the case should be, the best interests of all concerned dictate that proceedings of this nature require expeditious treatment at every stage of the appellate process. Although the statutes are silent regarding preferential settings of juvenile court cases in appellate courts, we believe the very nature of the proceedings, particularly when a waiver order is involved, requires early disposition by both the district court and supreme court. The bench and bar are admonished to give such cases the preferential treatment that justice and public interest may require." *Long v. State*, 202 Kan. 185, 448 P.2d 25 (1968).

The Kansas legislature has perhaps confounded, or perhaps clarified the situation in that state—all dependent upon by point of view—by making the appeal from a juvenile decision to district court a hearing de novo. *In re Templeton*, 202 Kan. 89, 447 P.2d 158 (1968); K.S.A.1967 Supp. 38–808(b).

In Idaho the judicial districts to varying degrees have not only given juvenile jurisdiction to magistrates, but to some magistrates in particular. These latter have performed largely and primarily as juvenile courts. This I believe to be commendable and is further reason for pipelining juvenile court waiver decisions directly into the Supreme Court.

IV.

In conclusion, it seems wrong, both morally and legally, for this Court on appeal to do any other than review the waiver deci-

sion on the facts and circumstances *as they existed at the time of the waiver hearing.* As with any appeal, where an appellate court reverses, it ordinarily considers that rights and duties are fixed as of trial time. Admittedly it is difficult to not view Dillard as a near 21 year old. But the cold inescapable fact remains that we review the juvenile court decision on the basis of the facts before it—one of which was that Dillard was apparently a *17 year old* miscreant, albeit involved in and likely guilty of serious criminal misconduct, who was found capable of rehabilitation.

As counsel for Dillard remarked at oral argument, anent the fact that Dillard the 1981 defendant in a criminal trial would be a 21 year old adult rather than the 17 year old juvenile which he was in 1978, the aging process is irresistible, and with every passing 24 hour period Dillard became a day older. Now he is more than a thousand days older, and still has not had the trial for his life which the state inexorably grinds toward; when that trial date arrives, as the Court's opinion tells us that it will, he will not ever have had the speedy trial which has been guaranteed to all.

It can only be hoped that out of this case will arise some rules or laws which insure that such critically important decisions as this are factually resolved, and appeals disposed of, within a reasonable time. Meanwhile, in this particular case a youth has been languishing in jail somewhere, presumably in some type of solitary confinement, getting neither the rehabilitative benefits of the Y.R.A. (Youth Rehabilitation Act) nor the speedy trial to which he is entitled if he is to be taken from the exclusive jurisdiction of the juvenile court. Clearly, as said once before, there are shortcomings in our procedures.