

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-1995

# Hill v Beyer, et al

Precedential or Non-Precedential:

Docket 94-5129

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Hill v Beyer, et al" (1995). *1995 Decisions.* Paper 195.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/195

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 94-5129

————

DARRYL S. HILL

Appellant

vs.

HOWARD BEYER;
DEBORAH T. PORITZ,
ATTORNEY GENERAL FOR THE STATE OF NEW JERSEY

————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 89-cv-00323)

————

Argued
May 2, 1995
Before:  MANSMANN, SCIRICA and SAROKIN, Circuit Judges.

(Filed   July 25, l995)

————

Philip J. Moran, Esquire  (Argued)
Moran & Haney
1230 Parkway Avenue
Suite 311
West Trenton, NJ  08628

    COUNSEL FOR APPELLANT

Stephen G. Raymond, Esquire
Burlington County Prosecutor

Saralee Smith Michaud, Esquire  (Argued)
Assistant Prosecutor Burlington County Prosecutor's Office
49 Rancocas Road
Mount Holly, NJ  08060

    COUNSEL FOR APPELLEES

————

OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal from the denial of a petition for the issuance of a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254, Darryl S. Hill denies that he knowingly and voluntarily waived his constitutional right to a jury trial, privilege against compulsory self-incrimination and right to confront his accusers, when he entered a guilty plea to charges of armed robbery, conspiracy to commit armed robbery and to the felony murder of a police officer. Unfortunately, during the plea colloquy in the New Jersey criminal proceeding the judge did not apprise Hill that he would be waiving these rights. The specific issue we must decide is whether Hill's plea nonetheless comported with the Supreme Court's directive in Boykin v. Alabama, 395 U.S. 238 (1969), that a guilty plea not be accepted absent an affirmative showing that it was knowing and voluntary.

This matter is further complicated because the district court declined to adopt the Report and Recommendation of the magistrate judge who, having conducted an evidentiary hearing on the issue of whether Hill knew of the constitutional rights he was waiving at the time he entered his plea, concluded that his plea was not knowing and voluntary. The district court did not hold an evidentiary hearing but instead determined from its de novo review of the record that despite the state court's failure to address Hill's constitutional rights, Hill's plea complied with the requirements of Boykin.

I.

3

Although the dispositive facts involve the plea colloquy and discussions with defense counsel, we also set forth the underlying events of the crime as they inform our decision.

On April 3, 1979, Hill, Ronald Evans, Craig Carter and Michael Jones drove from Philadelphia, Pennsylvania to Hammonton, New Jersey and committed an armed robbery at Raso's Liquor Store. They stole approximately $4,000 in cash, a revolver, four shotguns, a case of shotgun shells and several wristwatches. When they fled the scene in a 1973 Ford Thunderbird, they were pursued by Patrolman Daniel Chernavsky of the Medford Police Department. During the chase, Michael Jones and Ronald Evans wounded Patrolman Chernavsky. Shortly thereafter, when their car crashed into a wall, Hill, Evans, Carter and Jones separated. Sergeant Frank Fullerton of the Moorestown Police Department pursued Jones and was shot twice in the stomach and once in the right shoulder. Sergeant Fullerton died from these bullet wounds nearly a month later on June 1, 1979. Hill was not present when the fatal shots were fired, although he heard the shots.

On April 3 or 4, 1979, Hill, Jones, Carter and Evans were arrested and charged with multiple counts of armed robbery, conspiracy to commit armed robbery, and murder and/or felony murder. Hill provided a statement regarding his participation in the armed robbery. At the time, Hill was 18 years old with an eleventh grade education, and read on the level of a seventh grader. His only prior involvement with the criminal justice system as an adult was in Philadelphia, where he was charged with shoplifting, plead guilty, was fined $65 and was put on

4

probation, all without the aid of counsel. Shortly after Hill's arrest, John L. Madden, Esq., was appointed as counsel for Hill. Hill became frustrated that his case had not been set for trial and wrote a letter to the Burlington County assignment judge complaining of Madden's failure to meet and discuss the case with him and to request that his case be moved along.

By letter dated October 11, 1979, to Hill's mother, Madden introduced himself as Hill's appointed counsel and discussed Hill's options of entering a guilty plea versus trial. In this letter to Mrs. Hill, Madden informed her that the prosecutor's office was adamant against a plea bargain because a police officer had been killed. Madden opined that it was useless for Hill to plead guilty without a recommendation on sentence from the prosecutor and that Hill had little to lose by standing trial given his admitted involvement in the armed robbery and the application of the felony murder rule to Hill, which would mandate a life sentence if Hill was convicted. Madden also stated that he had requested that Hill's case be set for trial.

Madden then wrote a letter directly to Hill on October 25, 1979, informing him that the prosecutor had refused to enter into any type of plea bargain and would not conduct Hill's trial until the trigger man had been tried. Madden indicated his agreement with the prosecutor that Hill's trial should not commence until after the trigger man was tried. Madden further advised Hill to remain patient because his trial would probably not occur for an additional two months. Expressing his

5

disappointment that Hill had felt compelled to write to the assignment judge complaining of lack of contact with counsel, Madden discussed his role as Hill's counsel. He indicated that he was working on Hill's case with the same diligence and effort he expended in all cases but did not have time to contact Hill simply to state that he had nothing concrete to report; however, he would visit Hill in jail well in advance of trial to discuss the case and trial strategy. Madden further stated that he did not want to proceed absent Hill's full confidence and cooperation. Madden opined that Hill was not "in good shape" given that the application of the felony murder rule would permit a jury to find Hill guilty of first degree murder but that Madden could present an argument to the jury that would preclude the application of the felony murder rule to Hill. Madden requested that all future questions about the case be directed to him via letter given that Madden was quite busy and was usually out of the office when Hill would be able to call him. Finally, Madden reiterated that if Hill was dissatisfied with him, Madden would attempt to get him another lawyer.

Two weeks later, on November 6, 1979, Madden informed Hill by letter that his trial probably would not occur until January of 1980 and that the prosecutor wanted Hill to testify against the trigger man in exchange for a recommendation as to Hill's sentence. Madden noted that although no definite numbers had been agreed upon, the prosecutor hinted at a recommended sentence of 20-25 years, which Madden believed was reasonable given that the armed robbery charge alone authorized the

6

imposition of a maximum sentence of 30 years.  Madden asked for Hill's reaction to the possible 20-25 year sentence.

Hill immediately responded to Madden's letter, expressing his view that the proposed sentence of 20-25 years seemed inappropriate and inquiring as to whether Madden could continue his efforts on the plea bargain to obtain a 10-15 year sentence.  Hill stated his agreement that it would be better to wait until after the trigger man was tried.  Madden received Hill's response on November 10, 1979.

In the ensuing weeks, Hill apparently agreed to testify against his co-defendants, causing the others to decide to plead guilty.  On January 28, 1980, the trial court conducted a hearing to determine the admissibility of Hill's confession given a question raised as to the authenticity of Hill's signature on the Miranda form.  Hill was present for this hearing.  The court ruled that Hill's confession was admissible.

On January 30, 1980, Hill entered a plea of non vult to charges of felony murder, armed robbery and conspiracy to commit robbery.  The parties do not dispute that the plea colloquy failed to apprise Hill of the constitutional rights delineated in Boykin that Hill would waive by pleading guilty.  The plea colloquy between Hill and the New Jersey trial court in pertinent part was as follows:

    THE COURT:  Darryl Hill, how old are you?

    HILL:       Nineteen, sir.

    THE COURT:  Where do you live?

7

HILL:       1631 North Veston Street,
            Philadelphia,
            Pennsylvania.

THE COURT:  How far have you gone in school?

HILL:       Eleventh grade, sir.

. . . .

THE COURT:  Do you understand, sir,
            these are the crimes that
            we are talking about?

HILL:       Yes, sir.

THE COURT:  Do you understand that
            Mr. Madden tells me that
            you wish to change your
            not guilty plea to guilty
            with respect to those
            counts of those
            indictments?

HILL:       Yes, sir.

THE COURT:  Is anyone forcing you to do this?

HILL:       No, sir.

THE COURT:  Other than what the two
            attorneys have just
            stated on the record has
            anyone else promised you
            any particular deals,
            rewards or sentences for
            pleading guilty?

HILL:       No, sir.

THE COURT:  Do you realize that for
            these offenses you could
            be subject to life
            imprisonment plus one
            hundred twenty-eight
            years plus fines up to
            twenty-six thousand
            dollars?

HILL:       Yes, sir.

```
THE COURT:   Are you guilty of these
             offenses?

HILL:        Yes, sir.

THE COURT:   You were in court with me
             and heard the taped
             confessions that were
             read into the record
             yesterday, were you not?

HILL:        Yes, sir.

THE COURT:   Were they essentially
             true and correct?

HILL:        Yes, sir.

. . . .

THE COURT:   Allright, I find these
             actions to be voluntary.
             I will grant the defense
             motion for retraction of
             the not guilty pleas with
             respect to the counts
             enumerated only and in
             [their] place instead
             will enter pleas of
             guilty.
```

(A 9-15).  The state recommended a concurrent sentence on all charges, which would impact Hill's eligibility for parole.  Hill was sentenced to concurrent sentences of life imprisonment for felony murder and to 31-45 years for the remaining offenses.

9

Having exhausted his state remedies,[1] Hill filed a petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254[2] in January of 1989. The district court ordered an evidentiary hearing and referred the matter to a magistrate judge to determine whether Hill knew of the constitutional rights he was waiving by entering a plea of guilty. The magistrate judge conducted the evidentiary hearing on March 22, 1993 at which Hill testified on his own behalf and Madden testified for the State.

Under oath Hill described his confusion at the time of his plea hearing: that although many legal terms were spoken, he

---

[1] Hill moved for, but was denied, reconsideration of his sentence in the Superior Court of New Jersey, Burlington County, Criminal Division. The Superior Court of New Jersey, Appellate Division, affirmed the sentence on February 24, 1984 and the New Jersey Supreme Court denied certification on May 22, 1984. On January 23, 1985, Hill filed a petition for post-conviction relief in the Superior Court of New Jersey, Burlington County, Criminal Division, and was denied relief after a hearing on November 19, 1986. The Superior Court of New Jersey, Appellate Division affirmed the denial of post-conviction relief on October 23, 1987. The New Jersey Supreme Court denied certification on March 10, 1988.

[2] Hill's original petition alleged that his plea was not made knowingly and intelligently because the New Jersey trial court failed to advise him of his constitutional rights pursuant to Rule 11 of the Federal Rules of Criminal Procedure and his counsel misrepresented to him the terms of the plea agreement. On August 10, 1990, the district court denied the petition, ruled that Hill's claim of ineffective assistance of counsel lacked merit and noted that Rule 11 only governs proceedings in federal court. Nonetheless, the court recognized the importance of the constitutional rights at stake and granted Hill leave to amend his petition to state an appropriate claim regarding his lack of awareness of his constitutional rights at the time of his guilty plea. On May 20, 1992, Hill filed an amended petition alleging that his plea was not knowingly and intelligently made in violation of his constitutional rights and that his counsel was ineffective.

10

did not understand their meaning or the procedures of the court and how they affected him.  Specifically, Hill stated:

> I mean, I've heard of Book em Dano.  I've heard of trial.  I heard of you're under arrest.  I heard a lot of things, but when it comes down to what those things define, or are they or are they not rights that I have, that understanding I did not have at the time. . . .

(A 72-73).  Hill further testified that Madden never advised him of his rights to a trial by jury or to any other rights, including the privilege against self-incrimination.

Madden then testified that it was his general practice at his initial meeting with his client to review the indictment, the offenses, the applicable penalties and plea bargaining.  He could not recall whether he specifically advised Hill of the privilege against self-incrimination, the right to a trial by jury and the right to confront his accusers.  Madden testified:

> I honestly do not know if I specifically articulated to Mr. Hill that he had a right to a jury trial.
>
> . . . .
>
> But I -- I can tell you as a . . . general practice, that it -- I always discuss [rights under the Sixth Amendment in terms of confrontation,] with -- with clients, yes.

(A 94-96).  Madden further testified that he apprised Hill of his privilege against self-incrimination in conjunction with Hill's option of testifying against the trigger man in exchange for a plea bargain.  Madden advised Hill to think long and hard about the plea and to confer with his family especially since there

11

would be no specific recommendation as to sentence. Madden further testified that at the time of the plea, he reviewed with Hill the charges to which Hill was pleading guilty, the maximum punishment for those charges and that he could not guarantee Hill's sentence. Madden did not discuss with Hill his constitutional rights; he stated that:

> I was confident then, as I am now, that he did understand that. If it turns out that . . . it was also a requirement of the law, retroactively, that he be given this kind of exposition about additional aspects of his constitutional rights, then, as I said before I failed him.

(A 108).

The magistrate judge issued a Report and Recommendation dated August 27, 1993, recommending that the district court find that Hill sustained his burden of showing that his plea was not intelligently and voluntarily made and, therefore, that his constitutional rights were violated. The magistrate judge relied on the following factors in concluding that Hill's plea was not made intelligently and voluntarily:

1. Hill's uncontroverted testimony that he was not aware of the rights he was waiving when he plead guilty;

2. Hill's limited education;

3. Hill's prior criminal history that does not indicate a familiarity with this area of the law;

4. Madden's testimony that he could not recall advising Hill of his rights, but that he generally discussed those rights with clients;

5. the trial judge's failure to apprise Hill of the rights he was waiving by pleading guilty; and

12

> 6. a plea form that did not contain an exposition of those rights.[3]

The district court issued a Memorandum and Order dated February 2, 1994 finding that Hill's plea was voluntary and knowing. The district court conducted a de novo review of the written correspondence between Hill and Madden, which predated the guilty plea; the January 30, 1980 plea hearing transcript; and the transcript of the March 22, 1993 evidentiary hearing conducted by the magistrate judge. After reviewing all of the correspondence between Hill and Madden, the district court focused on the October 26 and November 10 letters, concluding that Hill was aware of his right to a jury trial and that he voluntarily pursued a guilty plea. The district court also determined that Madden's testimony further bolstered the fact that Hill's guilty plea was voluntary and knowing. Finally, although the district court recognized that the state court failed to advise Hill of his constitutional rights, the district court found that the colloquy, when coupled with Madden's testimony and the written correspondence, evidenced that Hill's plea complied with Boykin.

---

[3] There was some confusion prior to the evidentiary hearing as to whether Hill signed an LR–27 plea form or an LR–28 plea form, which superseded the LR–27 plea form. The LR–27 did not contain a recitation of the constitutional rights that would be waived upon entering a plea of guilty. Nor did the version of the LR–28 in use in 1980. The LR–28 in use since 1984 which was supplied to the district court, however, contains specific references to the constitutional rights waived by entering a plea of guilty –– the right to a trial by jury, the right against self-incrimination and the right to confront witnesses. The parties, however, stipulated to the magistrate judge that the 1980 LR–27 was the version of the plea form that Hill signed.

We review the district court's de novo review of the record on which the magistrate judge issued a Report and Recommendation, which included the transcript of the evidentiary hearing at which both Hill and Madden testified. Our review of the district court's legal conclusions is plenary; we review factual findings under the clearly erroneous standard. Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir. 1989). Hill's appeal from a final order of the district court is timely; thus, our jurisdiction is premised on 28 U.S.C.A. §§ 1291 and 2253 (West 1993 and 1994).[4]

## II.

In Boykin v. Alabama, 395 U.S. 238, 243 (1969), the Supreme Court made clear that no criminal defendant should plead guilty to a crime unless, and until, he has had explained to him and understands all of his constitutional rights and protections, including the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the right to confront one's accusers. In Boykin the Court

---

[4]     On March 9, 1994, Hill filed a notice of appeal from the district court's February 2, 1994 Memorandum and Order "reversing" the Report and Recommendation, which was not an appealable order. The district court issued a subsequent Order dated March 17, 1994, denying the petition for habeas corpus and certifying that there is no probable cause for appeal. This was a final order from which an appeal could be taken. See Fed. R. App. P. (4)(a)(2). We deemed Hill's notice of appeal as a request for the issuance of a certificate of probable cause pursuant to Federal Rule of Appellate Procedure 22(b), which we issued on November 11, 1994 as the issue presented in Hill's petition is not plainly frivolous. See generally Barefoot v. Estelle, 463 U.S. 880, reh'g denied, 464 U.S. 874 (1983).

14

instructed judges to ensure that a criminal defendant had a full understanding of what the plea connotes and its consequences by "canvassing the matter" on the record, thereby providing an adequate record for any review sought by the criminal defendant and forestalling collateral attacks that seek to probe murky memories. 395 U.S. at 243-44. It is exactly this situation that presents itself here where the state complains of its "impossible position of having to rebut countless allegations with little else but the faded memories of busy trial attorneys who have handled numerous cases since the original plea." Respondent's Brief at 18. We recognize that the New Jersey trial court practices[5] have been revised since Hill's plea was entered in 1980. Nonetheless, regardless of the practices in place in 1980 when Hill entered his plea, the trial court was bound to comply with the requirements of Boykin in accepting Hill's plea.

We have expressed concern regarding inexactitude by trial courts in accepting guilty pleas:

> [A]lthough starting from what superficially would appear to be two different premises for requiring an efficient plea process, it is clear that both society and the individual

---

[5] See generally Rule 3:9-2 of the New Jersey Rules Governing Criminal Practice:

> The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first addressing the defendant personally and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, . . . with an understanding of the nature of the charge and the consequences of the plea.

15

> defendant have arrived at an identical
> interest in the means by which their
> respective purposes are to be achieved -- an
> effective, thorough, complete and meaningful
> plea proceeding.  Imprecision in the manner
> in which these proceedings are conducted
> deserves the interests of both society and
> the criminal defendant.  On the one hand, a
> failure to properly apprise the criminal
> defendant of his rights leads to an
> unknowing, unintelligent and involuntary
> waiver.  On the other hand, to the extent
> that improperly administered pleas generate
> and encourage appeals which are time
> consuming, burdensome and difficult to
> process, the societal interests in
> rehabilitation, speedy justice, swift
> punishment and deterrence are thwarted.

United States v. Carter, 619 F.2d 293, 296-97 (3d Cir. 1980).  It is incumbent upon any court accepting a guilty plea to ensure that the criminal defendant has been apprised of and understands the constitutional rights waived upon entry of a guilty plea:

> [T]he hallmark of our criminal justice system
> is fundamental fairness.  Fundamental
> fairness dictates that guilty plea
> proceedings be undertaken sensitively.

Carter, 69 F.2d at 299.  Such sensitivity requires that, in the absence of testimony that a criminal defendant understands the constitutional rights he waives upon pleading guilty, a state trial court must engage in a colloquy on the record sufficient to ensure that the defendant has been apprised of his constitutional right to a jury trial, right to confront his accusers, and the privilege against self-incrimination.  Anything less fails to ensure that a criminal defendant has been adequately informed of his constitutional rights and renders the plea vulnerable to collateral attack.

16

The failure to specifically articulate Boykin rights, however, is not dispositive if the circumstances otherwise establish that the plea was constitutionally acceptable. United States v. Stewart, 977 F.2d 81, 85 (3d Cir. 1992), cert. denied, 113 S. Ct. 1433 (1993) (plea colloquy adequate despite trial court's failure to enumerate Boykin rights given that those rights were reviewed in prior plea colloquy that accrued only six weeks earlier).[6]

The critical issue here is whether the circumstances surrounding Hill's plea evidence that it was in fact knowing and voluntary; what Hill understood from the words spoken to and around him during court proceedings -- a question of fact. Hill had the burden of persuasion to establish that his plea was neither intelligent nor voluntary. Stewart, 977 F.2d at 85. The district court determined that Hill failed to carry his burden in large part based on its review of the record of the evidentiary hearing and of the correspondence between Madden, Hill and Hill's

_____

[6]      In addition to Stewart, the district court relied on United States v. DeForest, 946 F.2d 523, 526 (7th Cir. 1991), cert. denied, 502 U.S. 1118 (1992) (involving review of both pre and post-Boykin guilty pleas for sentence enhancement purposes). DeForest involved in relevant part the review by the Court of Appeals for the Seventh Circuit of a pre-Boykin plea where the trial judge failed to give the required constitutional warnings but asked the defendant about his prior convictions, education, mental state, the maximum penalty,and the facts of the offense. See Deforest, 946 F.2d at 524-25; Stewart, 977 F.2d at 85. While the plea colloquy at issue is factually similar to one of the pre-Boykin cases discussed in DeForest, that plea was analyzed under a pre-Boykin standard of constitutionality. Id., 946 F.2d at 525. The court of appeals in DeForest in fact expressly declined to decide the adequacy of the one post-Boykin plea at issue. See id. at 527. Thus, DeForest is inapposite to the analysis of the adequacy of Hill's post-Boykin plea.

17

mother from October 11, 1979 through November 10, 1979, all predating Hill's plea by three months.

### III.
### A.

The district court reviewed the record developed before the magistrate judge to determine whether to accept the magistrate judge's recommendation that Hill's plea was not knowing and voluntary. A district court may either accept the recommendation of a magistrate judge or reject the recommendation and reach an independent conclusion after hearing testimony and viewing witnesses. Louis v. Blackburn, 630 F.2d 1105, 1110 (5th Cir. 1980). The difficulty here is that the district court decided not to defer to the credibility determinations implicit in the magistrate judge's Report and Recommendation -- that Hill's testimony that he did not understand his constitutional rights at the time of the plea was believable.[7]

A district court may not reject a finding of fact by a magistrate judge without an evidentiary hearing, where the finding is based on the credibility of a witness testifying before the magistrate judge and the finding is dispositive of an application for post-conviction relief involving the

_____

[7] By Memorandum and Order dated February 2, 1994, the district court took an action which it described as "revers[ing]" the Magistrate Judge's Recommendation. A Magistrate Judge's Report and Recommendation, however, is not something that is reversible; it is adopted, rejected or modified by the district court. 28 U.S.C.A. § 636(b)(1)(West 1993). See also supra at n.4.

constitutional rights of a criminal defendant.  See Blackburn, 630 F.2d 1105; see generally Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989) ("Had the district court rejected the magistrate judge's conclusions regarding the credibility of the central witnesses without hearing live testimony from those witnesses, troubling questions of constitutional due process would have been raised.").  Further, the Supreme Court expressly noted concern in this regard when construing the Federal Magistrates Act, 28 U.S.C. § 636(b)(1):

> The issue is not before us, but we assume it is unlikely that a district judge would reject a magistrate [judge]'s proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach.

United States v. Raddatz, 447 U.S. 667, 681 n.7, reh'g denied, 448 U.S. 916 (1980) (a district court may accept a magistrate judge's recommendation without conducting a de novo hearing).

Our judicial system affords deference to the finder of fact who hears the live testimony of witnesses because of the opportunity to judge the credibility of those witnesses. Blackburn, 630 F.2d at 1109.  The magistrate judge believed Hill when he said he did not understand his constitutional rights at the time he entered his plea.  The district court, however, made credibility determinations without hearing the testimony of the witnesses in direct contravention of the credibility determinations implicit in the magistrate judge's Report and

19

Recommendation.  Thus, the district court erred in conducting its de novo review without hearing the testimony and viewing the witnesses when it was reviewing questions of fact which necessitated resolving credibility issues.


B.

While acknowledging Hill's testimony at that evidentiary hearing that he did not know that he was waiving his constitutional rights, the district court concluded that the "sworn testimony of John L. Madden, Esq. -- an individual intimately involved with the guilty plea of Darryl Hill --further bolsters the fact that Mr. Hill's guilty plea was voluntary and knowing."  February 2, 1994 Memorandum and Order at 9.  In so finding the district court ignored the credibility determinations made by the magistrate judge respecting Hill's testimony that he did not understand his rights.  The magistrate judge relied on Hill's testimony that:

> I understood . . . to the extent of what Mr.
> Madden was attempting to do.  I understood
> that these were things that were in court
> proceedings.  But as to what my
> constitutional rights were, what this -- that
> this -- that this word trial, was something
> that was not given to me what was mine.  It
> was a right that was mine, that was given to
> me by the Constitution of the United States.
> Not that Mr. Madden had the power to give me
> that right.
>
> I understand now, like I didn't then.  That
> my right to confront and cross examine my
> accusers was something that Mr. Madden
> couldn't give me, but it was a right that the
> United States gave me.

(Tr. 62). And further,

> As far as me knowingly, knowingly know that I can walk into the courtroom and say, no I'm not accepting this [plea], that I want a trial. I want to take it to trial. I want to take my chances at trial. I did not have that knowledge at the time, that I had the authority to do that.
>
> And what trial consisted of.

(Tr. 92). The plea colloquy in fact buttresses this testimony given that there is no mention of Hill's constitutional right to a jury trial. <u>See</u> <u>supra</u> at 7-9.

The district court nonetheless relied on Madden's testimony regarding his general practice of meeting with his client to discuss the elements of the crime and all possible defenses. Remarkably, the quoted passage in that regard ends with Madden's statement that:

> <u>I honestly do not know if I specifically articulated to Mr. Hill that he had a right to a jury trial</u>. We discussed trial, and -- and specifically when his trial would be in relation to a -- the co-defendant.

(Emphasis added.) February 2, 1994 Memorandum and Opinion at 8. Despite this statement, the district court accepted Madden's testimony as to what Madden believed Hill understood regarding his constitutional rights based on the correspondence between Madden and Hill.

> Madden testified:
> Q: Now, there's several references in the letters to Mr. Hill that you have, to a trial.
> Madden: Yes.

21

Q. Did Mr. Hill ever say that he didn't understand that? What a trial was, what a jury trial was?

Madden: No. And in fact, we wrote a letter agreeing that it would make sense not to be tried first. He -- my very, very strong sense of the -- of the matter was that he knew full well that he was awaiting trial, a trial for murder.

. . . .

Q. Would you have -- was it your belief that at the time of the plea, Mr. Hill knew the rights that he was waiving?

. . . .

THE COURT: Did you believe he understood his rights, and what he waiving?

Madden: Certainly. I -- I believed it then, I continue to believe it today.

(Tr. 120-21). In accepting this testimony, the district court implicitly rejected that portion of Hill's testimony that the magistrate judge characterized as "Hill's uncontroverted testimony that he was not aware of the rights he was waiving when he plead guilty." Report and Recommendation at 15.

The district court also reviewed all of the correspondence between Hill and Madden but specifically relied on Madden's October 11, 1979 letter to Hill's mother, where he explained that he advised Hill to go to trial as it would not do Hill any good to plead guilty without a recommendation on his sentence; Madden's October 25, 1979 letter to Hill, stating that the state would not enter into any plea and discussing arguments

22

for trial; and Hill's November 10, 1979 letter to Madden, where

Hill stated:

> I receive[d] your letter explaining the
> prosecutors agreement with you concerning the
> advantage of waiting until the trigger man[]
> has his trial.
>
> However, the proposed term of 20-25 years,
> seems inappropriate. . . .
>
> . . . .
>
> I think a sentence of 10-15 years would seem
> reasonable to me.
>
> Is it possible for you to continue your
> efforts on this plea bargain?
>
> As I said before, I too think it would be
> better to wait until after the "trigger["]
> man gets his trial.

(Emphasis added).  (RA 56-57).  Conspicuously absent from the

district court's discussion, however, was Madden's November 6

letter to Hill where Madden raised the potential of a plea with a

recommendation on sentence of 20-25 years in return for Hill's

testimony against the trigger man.

The district court characterized Hill's November 10

letter as a response to Madden's "letter of October 25, 1979 - a

letter which stated that Mr. Hill's trial should be after the

trigger man's for tactical considerations."  February 2, 1994

Memorandum and Opinion at 6.  From this presumption, the district

court concluded that the November 10 letter evidenced that Hill

voluntarily pursued a guilty plea and possessed an intelligent

awareness of his rights and options.  It is patently evident,

however, that Hill's letter dated November 10, 1979 is responsive

23

to Madden's November 6, 1979 letter, not his October 25 letter. The November 6 letter is the only letter from Madden that references the prosecution's discussion of a plea with a sentence of 20-25 years in return for Hill's testimony against the trigger man. When viewed in its proper context, Hill's November 10 letter is nothing more than a response to Madden's November 6 letter requesting Hill's thoughts on the plea option of 20-25 years. Thus, the district court's conclusion that Hill's plea was voluntary and intelligent based on Hill's inquiry in the November 10 letter as to whether Madden could continue his efforts on the plea bargain was based on the erroneous finding that it was in response to Madden's October 25 letter, which unequivocally stated that there would be no plea and discussed trial strategy.

IV.

We conclude that the district court erred by making credibility determinations from its de novo review of the record without the benefit of having viewed the witnesses' demeanor. As well, the district court erred in basing its denial of the petition in critical part on clearly erroneous factual determinations.

Accordingly, we will vacate the district court's judgment and remand to the district court for further review. The district court must hold an evidentiary hearing if its review involves resolving the credibility of witnesses who testified before the magistrate judge; however, if the erroneous factual

24

determinations we discuss, concerning issues that do not call a witnesses' credibility into question, were the dispositive factors for the district court's denial of the petition, an evidentiary hearing may not be required.

_____

SAROKIN, Circuit Judge, concurring and dissenting.

I agree with the majority's conclusion that "the district court erred by credibility determinations from its de novo review of the record without the benefi having viewed the witnesses' demeanor" and that many of the district court's factua findings were clearly erroneous. Maj. Op. at __ [Typescript at 23]. However, I dis because I disagree with the majority's resolution of the case. Instead of vacating remanding to the district court for further review, id., I would reverse and remand the district court to grant Hill's habeas petition. Based upon a review of the rec believe that Hill has met his burden of showing that his guilty plea was not knowin voluntarily entered. Specifically, I conclude that the factual findings of the dis court were clearly erroneous, and I would adopt the factual findings and credibilit determinations of the magistrate judge, who actually held an evidentiary hearing, i support of my conclusion that Hill's petition should be granted.

The district court, based on its de novo review of the record, determined Hill's guilty plea was constitutionally valid, even though the trial judge had fail advise Hill of any of his Boykin rights and even though the magistrate judge, after evidentiary hearing, concluded that Hill's guilty plea was constitutionally invali magistrate judge relied on: (1) Hill's uncontroverted testimony at the hearing that not aware of the rights he was waiving when he pled guilty; (2) Hill's limited educ (3) a prior criminal history which does not indicate a familiarity with this partic area of the law; (4) Hill's former attorney's testimony that he cannot specifically advising Hill of his rights, but that he generally discusses these rights with his clients; (5) the state trial judge's failure to apprise Hill of the litany of right would be waiving by pleading guilty; and (6) a plea form that did not contain an exposition of these rights.

26

For reasons to be discussed, I conclude that the district court's factual findings concerning the voluntariness of Hill's guilty plea were clearly erroneous. Furthermore, I believe that the magistrate judge's factual findings and credibility determinations, which were based on an evidentiary hearing, were essentially correc that these findings lead to the inescapable conclusion that Hill's guilty plea is constitutionally invalid.

The district court relied heavily on the correspondence between Hill and attorney. However, the correspondence between Hill's former attorney and Hill make mention of Hill's constitutional rights or that those rights are waived by pleading guilty. Although the correspondence does discuss a hypothetical jury trial, it doe specifically mention that Hill has the right to a jury trial and that this right is by pleading guilty. Notably, at the time of the correspondence, Hill was reading a seventh grade level. Moreover, even were we to find that an attorney's mere mentio the word "jury" in correspondence with a defendant is sufficient to apprise a defen his constitutional right to a jury trial and that this right is waived by pleading under Boykin a defendant must understand and appreciate the entire panoply of right he is about to waive by pleading guilty. Boykin, 395 U.S. at 243-44. In the correspondence, there is no evidence of a waiver of the privilege against self-incrimination or of the right to confront one's accusers. In fact, there is no evi of knowledge or waiver of these two rights by the defendant anywhere else in the re

Furthermore, Hill testified at the evidentiary hearing that at the time h entered his guilty plea he did not know of the constitutional rights he was waiving pleading guilty. Hill's testimony that he was unaware of these rights went uncontro

Hill's former attorney testified at the hearing that his standard practic to advise clients of their constitutional rights, but that he could not remember wh he advised Hill of these rights. I conclude that the district court erroneously re the attorney's testimony that he believed Hill was aware of his constitutional righ

27

notwithstanding that the attorney admitted he could not remember whether he advised

of his rights or that these rights would be waived by pleading guilty.

Additionally, the state trial judge failed to advise Hill of any of his

constitutional rights, and, thus, the plea colloquy does not establish that Hill kn

the constitutional rights he was waiving by pleading guilty. Therefore, the distri

court's reliance on the plea colloquy to establish that Hill knowingly and voluntar

waived his constitutional rights when pleading guilty was in error.

The following findings of the magistrate judge lend further support to th

conclusion that Hill's guilty plea was not knowing and voluntary. Defendant in the

instant case had no previous experience with the criminal justice system which woul

an independent awareness of the rights that were waived. Hill had never participate

jury trial, either as a defendant or as a witness. Hill was charged with several o

as a juvenile but was never advised of his constitutional rights in connection with

charges and never served a prison sentence. Hill's adult criminal record consisted

conviction for shoplifting for which Hill pled guilty; Hill was fined and received

year of probation. Hill was never advised of his constitutional rights in connecti

his conviction for shoplifting. Finally, the plea form signed by Hill did not cont

exposition of the constitutional rights he was waiving by pleading guilty.

In sum, after a careful examination of the record, I am firmly convinced

the district court's findings concerning the voluntariness of Hill's guilty plea we

clearly erroneous. I believe that Hill has sustained his burden of showing that he

neither aware of nor understood the constitutional rights which he waived by pleadi

guilty, and, thus, his plea was not knowing and voluntary and is invalid. As the

magistrate judge in the instant case recommended, Hill's guilty plea and conviction

be set aside, and the case remanded to the state court to afford Hill the opportuni

plead anew. A further hearing before the district court would serve no purpose bec

all of the relevant facts have been presented and appropriate findings made theref

28