

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-6-2004

# McGivern v. Meadowink Farms Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2165

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

### Recommended Citation

"McGivern v. Meadowink Farms Inc" (2004). *2004 Decisions.* Paper 251.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/251

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 03-2165

THOMAS MCGIVERN,

Appellant

v.

MEADOWINK FARMS, INC.
t/d/b/a
MEADOWINK GOLF COURSE

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 00-cv-01349)
District Judge:  Hon. William L. Standish

Submitted Under Third Circuit LAR 34.1(a)
October 4, 2004

Before:  SLOVITER, BECKER and STAPLETON, Circuit Judges

(Filed:   October 6, 2004)

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Thomas McGivern, a former employee of Appellee Meadowink Farms, Inc. ("Meadowink"), appeals from the judgment entered by the District Court following a bench trial in favor of Meadowink on McGivern's claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq.[1]

**I.**

McGivern was hired by Meadowink, which operates a public golf course in Murrysville, Pennsylvania, in May 1991 as a grounds-crew worker for the upcoming golf season. Meadowink's decision to hire McGivern was based, at least in part, on the fact that McGivern possesses carpentry and general "handyman" skills. In August 1992, McGivern sought, and received, an increase in his hourly wage to $9.00. He justified this raise because of his work on several projects that had required him to use his carpentry skills and many of his own tools. Thereafter, McGivern worked on several projects that utilized his handyman skills, saving Meadowink the cost of outsourcing those projects.

The District Court found that by fall 1992 McGivern was one of only two grounds-crew members who were classified by Meadowink as "full-time seasonal employees." As such, McGivern worked a longer season than the other grounds-crew members, and was eligible for certain benefits, such as participation in Meadowink's profit-sharing plan. In

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367; this court has jurisdiction over the lower court's final order pursuant to 28 U.S.C. § 1291.

contrast, Meadowink's other grounds-crew members were classified as "part-time seasonal employees," who worked a shorter season and were not eligible for the benefits enjoyed by the full-time seasonal employees.

In February 1995, Meadowink hired Joyce Ann Miller as Operations Manager. In an effort to increase Meadowink's profitability, Miller reviewed the hourly wages of Meadowink's employees, including McGivern's then hourly wage of $10.00. She concluded that it was more efficient from a business standpoint for Meadowink to hire outside contractors to perform special projects and that grounds-crew members should concentrate on their principal assignment – maintenance and upkeep of the golf course – and should not be used on special projects. As a result, and with the concurrence of the other managers at Meadowink, McGivern's position was eliminated and he was not rehired for the 1997 golf season.

When McGivern was informed that he was not being rehired because his position as a full-time seasonal employee was being eliminated and that Meadowink could no longer afford to pay him an hourly wage of $10.00, he became agitated and offered to work for Meadowink for a reduced hourly wage of $9.00. Miller responded by stating, "Try around $4.00 an hour," a statement the District Court found facetious and not an offer of continued employment.

At the time of Meadowink's decision not to rehire McGivern, he was fifty-eight years old. In 1996, McGivern's final year of employment with Meadowink, Meadowink

3

employed thirty individuals who were over forty years old and therefore under the protection of the ADEA. 29 U.S.C. § 631(a). Of these thirty, seventeen were older than McGivern; three of these seventeen were members of McGivern's grounds crew.

Following the decision not to rehire McGivern, Meadowink hired four new employees as grounds-crew workers, none of whom was older than forty; two of these workers were under twenty years of age. The District Court found that these employees were classified as part-time seasonal workers and that Meadowink did not hire a full-time seasonal worker after its decision not to rehire McGivern. Thus, the District Court concluded, as a matter of fact, that Meadowink did not replace McGivern.

As a result of this determination, the District Court found that McGivern had failed to establish a prima facie case of discrimination. Alternatively, the District Court, assuming arguendo that McGivern had established a prima facie case of age discrimination, concluded that McGivern had offered insufficient evidence to meet his burden of showing that Meadowink's articulated legitimate, nondiscriminatory reason for its decision not to rehire McGivern for the 1997 golf season was pretextual.

Although the District Court found that Meadowink's decision to not rehire McGivern was largely driven by budgetary concerns, it also found that the decision was further influenced by two additional factors. First, the District Court noted that McGivern had suffered several work-place injuries and had also negligently injured a coworker – occurrences that led some at Meadowink to view McGivern as a safety risk. Moreover,

4

the District Court found that McGivern, on one occasion, had been involved in a confrontation with his supervisor. Although the District Court concluded that neither of these factors, either alone or in combination, would have resulted in a decision not to rehire McGivern, these factors did play some role in the decision. In sum, the District Court found, as a matter of fact, that Meadowink's decision not to rehire McGivern was totally unrelated to McGivern's age.

The District Court entered judgment in favor of Meadowink. McGivern filed a timely appeal.

## II.

Following a bench trial, this court has plenary review of a district court's choice and interpretation of legal standards, as well as the district court's application of those standards to the facts of the case. We review the district court's findings of fact for clear error. Beta Spawn, Inc. v. Fee Transp. Servs., 250 F.3d 218, 223 (3d Cir. 2001); see also Fed. R. Civ. P. 52(a).

McGivern acknowledges that the District Court properly selected, interpreted, and applied the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Fakete v. Aetna, Inc., 308 F.3d 335, 338 n.3 (3d Cir. 2002) ("[T]he McDonnell Douglas framework applies in ADEA cases.").[2] Instead, McGivern

[2] On appeal, neither party addresses specifically McGivern's claim under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq. At least in the context of this action, however, that statute is more-or-less coextensive with the ADEA and, therefore, we need not address it separately. See Simpson v. Kay Jewelers, Div. of

5

challenges the District Court's factual finding respecting the nature of his employment and the District Court's attendant factual finding that Meadowink did not replace him with nonmembers of his protected class after his termination.

To prevail on an ADEA claim, a plaintiff must show that his age "'actually motivated'" and "'had a determinative influence on'" the employer's decision to fire or not hire him. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). An ADEA plaintiff can meet this burden (1) by presenting direct evidence of discrimination, see Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), or (2) by presenting indirect evidence of discrimination that satisfies the familiar three-step framework of McDonnell Douglas. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101 (3d Cir. 1997) (en banc). In this case, McGivern's case proceeded under the McDonnell Douglas framework, which requires a plaintiff to first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate and nondiscriminatory reason for its decision. If the employer articulates such a reason, the inference of discrimination raised by the prima facie showing falls away and the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason was actually a pretext for discrimination. Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (per curiam).

---

Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998).

It is not disputed here that McGivern satisfied the first three elements of the prima facie case under McDonnell Douglas, i.e., he was within the protected class; he was qualified for the position at issue; and he was fired or not rehired despite his qualification for the job. The parties disagree, however, on whether Meadowink replaced McGivern with an employee who was not within the protected class. Cf. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 n.7 (3d Cir. 2003) (noting that Title VII plaintiff need not show that s/he was replaced by someone outside protected class to prove prima facie case of discrimination if plaintiff shows that employer continued to seek out individuals with similar qualifications).

At trial, Meadowink did not dispute the fact that after its decision not to rehire McGivern for the 1997 season, it hired four additional grounds-crew workers who were not members of the protected class. The District Court, although acknowledging the post-termination hires, found that McGivern was a full-time seasonal employee rather than a mere grounds-crew worker and, therefore, that Meadowink did not in fact replace McGivern.

McGivern argued in the District Court and now on appeal that he was a mere grounds-crew worker, that Meadowink formulated the "full-time seasonal employee" designation only in response to this litigation, and that by hiring the additional workers, Meadowink did indeed replace him with nonmembers of the protected class. In support of this argument, McGivern notes that his employee folder terms his employment as

7

"Golf Course," that Meadowink described his employment in terms such as "laborer on golf course" or "grounds maintenance" in its reports filed with public health and safety entities, and that the preprinted weekly time sheets prepared by Meadowink for his completion and submission had no category for "handyman," "carpenter," or "full-time seasonal employee." He also testified at trial that his primary duties at Meadowink revolved around the routine maintenance of the golf course and that he did the carpentry tasks for Meadowink on his own time, not in the regular course of his Meadowink employment for which Meadowink paid him separately. McGivern's direct supervisor, Don LiPrado, testified that, although McGivern did engage in some carpentry work for Meadowink, this work never interfered with his principal job, maintaining the golf course. Referencing these documents and testimonies, McGivern maintains that the District Court clearly erred in making the finding that he was a "full-time seasonal employee," and that Meadowink did not fill his position.

McGivern's argument is unavailing. At the bench trial, both Susan Tanto, Meadowink's General Manager, and Miller, the Operations Manager, testified that Meadowink indeed classified McGivern, along with one other employee, as "full-time seasonal employees." Likewise, LiPrado testified that Meadowink classified McGivern as a full-time seasonal employee. Perhaps more importantly, the evidence at trial showed that McGivern's employment, whatever its nomenclature, had features that served to differentiate him from the mere grounds-crew employees, most particularly that he

8

worked ten months out of the year. The employees Meadowink hired for the 1997 golf season did not work McGivern's ten-month season.

At trial, Tanto explained that Meadowink used the terms it used for McGivern, i.e., "laborer," "golf course" or as a member of "grounds maintenance," to describe any employee that did not occupy a supervisory position. Thus, the existence of several documents describing McGivern in these terms does not render the District Court's decision that McGivern was a full-time seasonal employee clearly erroneous.

Moreover, the trial record is replete with references to the various carpentry and handyman projects McGivern completed for Meadowink. Among other projects, McGivern enlarged Meadowink's parking lot, repaired stairs, installed a shelf in the golf clubhouse, and constructed a safety wall. And, apart from McGivern's own testimony, there is no evidence that Meadowink paid McGivern separately for these tasks. Indeed, at an ultimate hourly wage of $10.00, McGivern enjoyed a significantly higher rate of compensation than mere grounds-crew employees whose average hourly wage in 1996 was $6.91. The District Court did not clearly err in attributing this higher pay rate to McGivern's specialized and more highly-skilled duties and obligations. On this record, the District Court's determination that McGivern was a full-time seasonal employee was not clearly erroneous, nor was its attendant finding that Meadowink did not replace McGivern with nonmembers of his protected class.

9

**III.**

The District Court further determined that, assuming <u>arguendo</u> that McGivern had raised a prima facie case of age discrimination, he proffered insufficient evidence to rebut Meadowink's articulated legitimate and nondiscriminatory reason for its decision. This was also a fact-based determination that we review for clear error. <u>Robinson v. Lehman</u>, 771 F.2d 772, 780 (3d Cir. 1985). The clearly erroneous standard of review is especially appropriate where, as here, an appellant's arguments center primarily on the district court's resolution of witness credibility issues. <u>Hill v. Beyer</u>, 62 F.3d 474, 482 (3d Cir. 1995).

The employer satisfies its burden of production by introducing evidence which, if taken as true, would permit the conclusion that there was a nondiscriminatory reason for its decision. "The employer need not prove that the tendered reason <u>actually</u> motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis in original). Thus, once the employer answers its "relatively light burden" by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who then must show, by a preponderance of the evidence, that the employer's explanation is pretextual. <u>Id.</u>

In this case, Meadowink contends that its decision to not rehire McGivern was

based on budgetary concerns. Specifically, Meadowink maintains that it determined that it would be more cost-effective to hire outside contractors to perform special projects than to retain McGivern and have him complete such tasks. Moreover, Meadowink decided not to hire McGivern as a part-time seasonal worker at a lower salary because, based on Miller's prior experiences, it believed that such a course of action would have generated negative consequences.

McGivern argues that the witnesses who testified at the bench trial on Meadowink's behalf respecting its asserted reason for the decision to not rehire McGivern lacked credibility and that Meadowink only began calling him a "full-time seasonal employee" to obscure the fact that it refused to rehire him based upon his age. He therefore argues that the District Court clearly erred in finding that he had failed to carry his burden of showing that Meadowink's articulated nondiscriminatory reason for its decision was pretextual.

On this record, despite the vigorous arguments made by McGivern's counsel in her appellate brief, we cannot hold that the District Court's decision that McGivern failed to satisfy his burden of showing that Meadowink's articulated, legitimate and nondiscriminatory reason was pretextual was clearly erroneous. The District Court, after reviewing the evidence and viewing the demeanor and composure of Meadowink's witnesses, credited Meadowink's proffered rationale for its decision to not rehire McGivern: "Based on the evidence presented during the non-jury trial, the court finds that

11

defendant's decision not to rehire plaintiff for the 1997 golf season was based on budgetary concerns and was totally unrelated to plaintiff's age." App. at 11a. The clearly erroneous standard of review allows only an assessment of whether there is enough evidence on the record to support a district court's findings, Robinson, 771 F.2d at 781. There is in this case.

Because the District Court's finding on this point can "be reasonably inferred from the entire trial record," Scully v. US Wats, Inc., 238 F.3d 497, 506 (3d Cir. 2001), we will affirm the judgment.

---