**NOT PRECDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1147
_____

WAYNE COOMBS

v.

DAVID DIGUGLIELMO;
DISTRICT ATTORNEY PHILADELPHIA;
ATTORNEY GENERAL PENNSYLVANIA,

Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-04-cv-01841)
District Judge:  Honorable Cynthia M. Rufe

Argued on March 6, 2014

Before:  AMBRO, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 25, 2014)

Molly S. Lorber, Esquire (Argued)
Assistant District Attorney
Thomas W. Dolgenos, Esq.
Chief, Federal Litigation
Philadelphia Office of District Attorney
Three South Penn Square
Philadelphia, PA 19107
                    Counsel for Appellant

Leon A. Williams, Esquire (Argued)
327 South 13th Street
Philadelphia, PA 19107

Counsel for Appellee

---

O P I N I O N

---

**ROTH**, <u>Circuit Judge</u>:

The District Attorney of the County of Philadelphia, the Attorney General of

Pennsylvania, and David DiGuglielmo, the former Superintendent of the State

Correctional Institution at Graterford appeal the District Court's order sustaining Wayne

Coombs's objections to the Magistrate Judge's Report and Recommendation and granting

his habeas corpus petition for the prosecutor's strike of a prospective juror in violation of

*Batson v. Kentucky*, 476 U.S. 79 (1986). For the reasons that follow, we will reverse.

## I.    Background

Coombs was arrested on February 22, 2000, for a series of robberies that occurred

in Philadelphia during the winter of 1999–2000. His September 2001 trial in the

Philadelphia Court of Common Pleas ended with a hung jury.

Coombs was re-tried in November 2001. On the first day of jury selection, the

prosecutor raised a "reverse *Batson*" challenge against defense counsel's use of

peremptory strikes to strike three white jurors. Defense counsel then raised his own

*Batson* challenge. The prosecutor provided race-neutral reasons for the strikes. The

judge denied both challenges.

During jury selection the next day, defense counsel again raised *Batson* challenges against the prosecutor's peremptory strikes. The prosecutor offered race-neutral reasons for striking some jurors that are not relevant here. He then gave his explanation for his strike of Juror No. 1, a black man:

> I just didn't like him, Your Honor, I don't really have a sound reason. It was the first strike I used. I don't know, just the way he was looking at me. If that's a reason it's justified, but Your Honor found there's no pattern. I mean I just didn't like him and he didn't check off many boxes, but I went with my hunch, as Your Honor said yesterday.

R. at 344, Trial Tr. at 75 (Nov. 27, 2001). The court responded, "Okay. All right. Let's go. Are we ready to start?" Defense counsel then asked if the court was accepting the prosecutor's reasons and denying the *Batson* challenges. The court confirmed that it was.

On November 30, 2001, a jury consisting of nine white jurors and three black jurors convicted Coombs of nine counts of robbery and three counts of possessing an instrument of a crime. At sentencing on February 13, 2002, defense counsel again raised a *Batson* challenge. He sought to introduce evidence of two conversations he allegedly had with the prosecutor that he claimed were relevant to the prosecutor's state of mind with respect to race in using his peremptory strikes. Over repeated protests from defense counsel, the court declared it irrelevant and rejected the *Batson* argument. The District Judge offered to let defense counsel submit an affidavit. Coombs was sentenced to 59 to 160 years in prison.

Less than a week later, defense counsel submitted an affidavit stating that, between the first and second trials, he had a conversation with the prosecutor who told him that in the first trial there had only been one "holdout" juror and it was a black

3

woman. Counsel also stated that he and the prosecutor had another conversation, between the conclusion of the second trial and sentencing, in which the prosecutor said that the "holdout" juror from the first trial "had voted not guilty because the defendant was black and she was black." *Coombs v. DiGuglielmo*, 912 F. Supp. 2d 228, 232–33 (E.D. Pa. 2012). The court denied Coombs's motion renewing the *Batson* claim.

Coombs filed a direct appeal to the Pennsylvania Superior Court raising the *Batson* challenge and other claims. The Superior Court denied them without reaching the merits of his claims because of Coombs's failure to comply with *Commonwealth v. Spence*, 627 A.2d 1176 (Pa. 1993).[1] The Pennsylvania Supreme Court denied leave to appeal. Coombs then filed a petition for a writ of habeas corpus in the Eastern District of Pennsylvania.

The Magistrate Judge found that Coombs had failed to show that the state trial court's decision was "contrary to, or involved an unreasonable application of"[2] *Batson* and recommended denial of the petition. The District Judge adopted the R&R and denied the petition. Coombs appealed.

---

[1] "The *Spence* rule requires an appellant raising a *Batson* challenge to make a record identifying the race of venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury selected." *Coombs v. Diguglielmo (Coombs I)*, 616 F.3d 255, 259 n.2 (3d Cir. 2010) (citation and internal quotation marks omitted). We have found the *Spence* rule "inconsistent with the teachings of *Batson*." *Holloway v. Horn*, 355 F.3d 707, 726 (3d Cir. 2004); *see also Bronshtein v. Horn*, 404 F.3d 700, 723 (3d Cir. 2005) ("It is noteworthy that *Batson* discussed what a criminal defendant must do to establish a prima facie case without hinting that a defendant must always satisfy anything like the rigid [*Spence*] requirements.").
[2] Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d).

In a precedential opinion, we stated that "when, although properly preserved by the defendant, the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA do not apply." *Coombs I*, 616 F.3d at 260 (internal quotation marks and alteration omitted) (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)). We also held that the District Court failed to properly conduct step three of the *Batson* analysis, which requires the court to show "engagement with the evidence" to determine whether the prosecutor's proffered race-neutral reason for the strike was pretextual. *Id.* at 262 (internal quotation marks omitted). Because the District Court failed to do this, we remanded for an evidentiary hearing.

On remand, the District Court referred the case to the Magistrate Judge to conduct an evidentiary hearing and draft a revised R&R. The hearing was held on April 26, 2011, with both the original prosecutor, Max Kramer, and the original defense counsel, Jerome Mallon, testifying. There was little new evidence on the prosecutor's strike of Juror No. 1. *Coombs*, 912 F. Supp. 2d at 235. Defense counsel introduced the prosecutor's handwritten notes from the first trial, which included short phrases such as "L or R hand with gun," "color of jacket," and "foreperson Antipolice." *Id.* at 236. One of the notes next to a recording of an 8 to 4 jury vote says "racial lines." *Id.*[3] At the hearing, Coombs produced evidence about the racial composition of the jury and the venire panel. The panel had 9 black venirepersons (33%) and 18 white venirepersons (67%). *Id.* at 236–37.

---

[3] Mr. Kramer admitted that the notes were written by his hand, but did not recall writing them and could provide no context. *Id.*

The prosecutor used six of the seven peremptory challenges allotted to him, five of those six on black venirepersons (83%). *Id.* at 237. The final jury was composed of three black jurors (25%) and nine white jurors (75%). *Id.*

The Magistrate Judge recommended that the court deny the petition for the writ of habeas corpus. The Magistrate Judge heard live testimony from the prosecutor, who testified that his strike was based on Juror No. 1's demeanor but did not recall what specific characteristics troubled him. He testified that it was not his practice in his many years as a prosecutor to take race into account *Id.* at 238–39. The Magistrate Judge found him credible and found that "he did not exercise any of his peremptory strikes in a discriminatory manner." *Coombs v. DiGuglielmo*, No. 04-1841, 2011 WL 9683989, at *9 (E.D. Pa. Sept. 7, 2011). Coombs objected only to the conclusions with regard to Juror No. 1.

The District Judge sustained Coombs's objections, finding that the reason for striking, plus the evidence of the prosecutor's notes, high rate of striking black venirepersons, and not striking whites who answered the jury questionnaire similarly led to the conclusion that it was more likely than not that the prosecutor's proffered reason for the strike was a pretext for racial discrimination. *Coombs*, 912 F. Supp. 2d at 239–41. The judge granted the writ, conditioned on the Commonwealth's right to retry. The Commonwealth filed this appeal.

III. **Discussion**

Federal appellate review of state-court habeas decisions on the merits proceeds under the highly deferential standard of AEDPA, 28 U.S.C. § 2252. In this case,

6

however, the state courts did not reach the merits of Coombs's *Batson* challenge. *Coombs I*, 616 F.3d at 261.  When this occurs, the deferential standards provided for by AEDPA do not apply.  *Id.*  Therefore, in *Coombs I* we exercised de novo review.  *Id.* We do the same here.  We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

The Equal Protection Clause forbids the use of peremptory strikes against potential jurors on the basis of race.  *Batson*, 476 U.S. at 88–89.  *Batson* established a three-step process for determining the constitutionality of a peremptory strike.  First, the defendant makes a prima facie case that the prosecutor exercised a peremptory challenge on the basis of race.  *Coombs I,* 616 F.3d at 261.  "Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question."  *Id.* (citing *Rice v. Collins*, 546 U.S. 333, 338 (2006)).  "Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination."  *Id.* (quoting *Rice*, 546 U.S. at 338).

Proof of racially discriminatory intent or purpose is required to show a *Batson* violation.  *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality op.) (citing *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977) (requiring racially discriminatory intent for violation of the Equal Protection Clause)).  The prosecutor's "subjective intent is the principal focus of a *Batson* challenge."  *Hardcastle v. Horn*, 368 F.3d 246, 257 n.4 (3d Cir. 2004); *see also Williams v. Beard*, 637 F.3d 195, 216 (3d Cir. 2011) ("Step three ultimately focuses on the prosecutor's subjective motivation . . ..."); *Pemberthy v. Beyer,* 19 F.3d 857, 872 (3d Cir. 1994) ("The dispositive

7

question is the factual question of subjective intent."). On step three of the analysis, "the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

District judges exercise de novo review over a Magistrate Judge's Report and Recommendation stemming from an evidentiary hearing conducted as part of the review of a habeas petition. 28 U.S.C. § 636(b)(1). We have held, however, that "[a] district court may not reject a finding of fact by a magistrate judge without an evidentiary hearing, where the finding is based on the credibility of a witness testifying before the magistrate judge and the finding is dispositive of an application for post-conviction relief involving the constitutional rights of a criminal defendant." *Hill v. Beyer*, 62 F.3d 474, 482 (3d Cir. 1995). Thus, when the magistrate judge holds an evidentiary hearing that includes the testimony of live witnesses, a district court cannot ordinarily reject the magistrate judge's credibility determinations unless it holds its own evidentiary hearing. The district judge may not reject those findings without holding its own evidentiary hearing. *See Boyd v. Waymart*, 579 F.3d 330, 333 (3d Cir. 2009) (en banc) (per curiam) ("[W]e conclude the District Court improperly rejected—on a cold record—the Magistrate Judge's finding."); *id.* at 338 (Scirica, C.J., concurring) (concluding that the District Court "should hold its own evidentiary hearing if it declines to adopt the Magistrate Judge's finding").

The issue of intent to discriminate is a "pure issue of fact," *Hernandez*, 500 U.S. at 364, that turns on the fact finder's evaluation of the witness's credibility, *see Batson*, 476 U.S. at 98 n.21. In this case, the Magistrate Judge made a credibility determination based

8

on the prosecutor's statements and demeanor when testifying and concluded that the prosecutor did not purposefully discriminate. *Coombs*, 2011 WL 9683989, at \*9.

The Commonwealth contends that the District Court erred in rejecting the finding of the Magistrate Judge on a factual question without holding a new evidentiary hearing. We agree. As we stated in *Hill* and *Boyd*, a District Judge may not reject a Magistrate Judge's factual finding without holding its own evidentiary hearing. *Boyd*, 579 F.3d at 333; *Hill*, 62 F.3d at 482. That is exactly what the District Court did in this case.

The dispositive question is the subjective intent of the prosecutor. After hearing live testimony, the Magistrate Judge found that the prosecutor did not intentionally discriminate on the basis of race. After the Magistrate Judge held the evidentiary hearing, the District Judge could either accept the decision or hold a new evidentiary hearing. Citing *Hill*, 62 F.3d at 482, the District Court here acknowledged as much. It chose to accept the Magistrate Judge's assessment of credibility.

This determination is dispositive. There is no reason to go on to speculate on pretext. Pretext would reflect lack of credibility – and the prosecutor's credibility was found by the Magistrate Judge.[4] Once the District Court accepted the Magistrate Judge's finding that the prosecutor did not subjectively intend to strike a potential juror based on race, the *Batson* step three inquiry was decided. *See, e.g.*, *Bond v. Beard*, 539 F.3d 256, 269 (3d Cir. 2008).

---

[4] If, rather than finding that the prosecutor was credible, the Magistrate Judge had found merely that the prosecutor had offered a racially neutral explanation for the strike, pretext would be an appropriate issue on Step Two for further consideration in reviewing the *Batson* claim.

9

Therefore, we will reverse the District Court's order sustaining Coombs's objections and granting the writ of habeas corpus.[5] Based on the District Judge's acceptance of the Magistrate Judge's finding on the prosecutor's subjective intent, we will remand with instructions to adopt the Magistrate Judge's Report and Recommendation and grant judgment in favor of the Commonwealth.

---

[5] Given our disposition of the appeal, we need not address the Commonwealth's argument that Coombs was foreclosed from a federal evidentiary hearing under the requirements of 28 U.S.C. § 2254(e)(2).